THE STATE OF OHIO, APPELLANT, *v.* SELF, APPELLEE.

[Cite as State *v.* Self (1990), 56 Ohio St. 3d 73.]

(No. 89-1501—Submitted October 2, 1990—Decided December 12, 1990.)

*Donald W. White,* prosecuting attorney, *Albert J. Rodenberg, Jr.* and *Daniel J. Breyer,* for appellant.

*R. Scott Croswell III* and *Elizabeth E. Agar,* for appellee.

H. BROWN, J. This case arises from a prosecution on charges related to allegations of child abuse. We consider three issues: (1) whether use of videotaped testimony by the child-victim violates the Confrontation Clauses contained in the Ohio and federal Constitutions; (2) whether the hearsay rule is violated by the admission of testimony from a therapist and a case worker relating statements made to them by the child-victim; and if so, (3) whether the error was prejudicial. For the reasons which follow we reinstate appellee's convictions because we find no violation of the constitutional Confrontation Clauses and we find the admission of the challenged hearsay evidence to be harmless error.

I

*Constitutionality of R.C. 2907.41(A) Videotaped Deposition Procedure*

R.C. 2907.41, enacted in 1986, is intended to protect child sexual abuse victims from traumatization in an "intimidating courtroom atmosphere" while preserving the right of the accused to confront the witnesses against him. Comment, Children's Testimony in Sexual Abuse Cases: Ohio's Proposed Legislation (1986), 19

Akron L. Rev. 441, 442-445. Similar statutes are in effect in at least forty-four other states. See *Maryland* v. *Craig* (1990), 497 U.S. ___, ___, 110 S. Ct. 3157, 3167-3168, 111 L. Ed. 2d 666, 683-684, fn. 2-4.

The Ohio statute which is at issue here (R.C. 2907.41) permits the testimony of a child who was under eleven at the time of the indictment to be prerecorded as a "videotaped deposition" which can be played at trial. The deposition may only be admitted at trial[2] if the court specifically finds: (1) that the witness would suffer "serious emotional trauma" if required to testify in the presence of the defendant, and (2) that the defendant was given an opportunity to develop the testimony by direct, cross-, or redirect examination similar to the opportunity he would have had in the courtroom.[3] R.C. 2907.41(B)(1).

The statute requires that the defendant be provided with an audio and video monitor to observe the proceedings, and a telephone to communicate with counsel. There is also a requirement that a video monitor be provided so the witness can see the defendant. R.C. 2907.41(A)(2), (C), and (D). In all other material respects, including cross-examination, the testimony proceeds as though it were being conducted in open court.

## A
### *The constitutional right of confrontation*

The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." Section 10, Article I of the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face to face * * *; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. * * *"

The Confrontation Clauses were written into our Constitutions "*to secure for the opponent the opportunity of cross-examination*. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." (Emphasis *sic*.) 5 Wigmore on Evidence

---

[2] In the instant case, the trial court held a hearing on admissibility of the videotaped deposition before it was recorded. The statute contemplates that the hearing be held after the deposition is taken, but before trial. This departure from the statutory sequence had no effect on the admissibility of Angela's videotaped deposition. Nor did it prejudice appellee in any other respect.

[3] Other statutory procedures may be used where a witness proves unable or unwilling to testify in open court, as well as where there is a finding that serious emotional trauma would result. R.C. 2907.41(E). Under R.C. 2907.41(C), the testimony may be presented live from a separate room via closed-circuit television. R.C. 2907.41(D) permits the court to record the testimony in a separate room on the day of trial and replay it to the jury.

(Chadbourn Rev. 1974) 150, Section 1395; see, also, *Douglas* v. *Alabama* (1964), 380 U.S. 415, 418; *Dowdell* v. *United States* (1911), 221 U.S. 325, 330; *Mattox* v. *United States* (1895), 156 U.S. 237; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 162-163, 34 O.O. 2d 270, 277, 214 N.E. 2d 417, 426; *Henderson* v. *Maxwell* (1964), 176 Ohio St. 187, 188, 27 O.O. 2d 59, 60, 198 N.E. 2d 456, 458; Note, Placing a Child Victim of Sexual Abuse Behind a Screen During Courtroom Testimony as Violation of Sixth Amendment Confrontation Clause: *Coy* v. *Iowa, 108 S. Ct. 2798 (1988)* (1989), 57 U. Cin. L. Rev. 1537, 1539-1545.

Literal face-to-face confrontation is not the *sine qua non* of the confrontation right. *Craig, supra,* at ____, 110 S. Ct. at 3164, 111 L. Ed. 2d at 679; see, also, *Coy* v. *Iowa* (1988), 487 U.S. 1012, 1025 (O'Connor, J., concurring). Admittedly, a defendant is ordinarily entitled to a face-to-face confrontation at trial. *Ohio* v. *Roberts* (1980), 448 U.S. 56, 63. However, physical confrontation may constitutionally be denied where the denial is necessary to further an important public policy and "the reliability of the testimony is otherwise assured." *Craig, supra,* at ____, 110 S. Ct. at 3166, 111 L. Ed. 2d at 682. For example, there are circumstances under which hearsay statements are admissible in criminal prosecutions, despite the inability of the accused to physically confront the declarant. *Roberts, supra,* at 65. The United States Supreme Court has recognized that an adequate opportunity to cross-examine may satisfy the clause in the absence of physical confrontation. *Douglas, supra,* at 418.

### B
*Application of the Confrontation Clauses to statutes permitting testimony by child sexual abuse victims outside the defendant's physical presence*

In *Coy* v. *Iowa, supra,* the United States Supreme Court invalidated a conviction for child molestation where a one-way screen was placed between the child witnesses and the defendant. The Iowa statute authorizing the use of the screen imposed what amounted to a legislative presumption that physical confrontation could be denied in all prosecutions for the sexual abuse of children. *Id.* at 1021. There was no evidence presented that the children involved needed protection. *Id.* Thus, as Justice O'Connor noted in her concurrence, there was no "case-specific finding" that the screen procedure was necessary to further the state's compelling interest in protecting those child witnesses. *Id.* at 1025.[4]

In the more recent case of *Maryland* v. *Craig, supra,* the United States Supreme Court considered a Maryland statute which provided for the presentation of testimony via closed-circuit television when "[t]he judge determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot

---

[4] There is language in Justice Scalia's majority opinion which suggests that physical confrontation cannot be denied even where there is a case-specific finding of necessity. See *Coy, supra,* at 1019-1020. Such a literal position seems to be at odds with much of the court's Confrontation Clause jurisprudence. See, *e.g., California* v. *Green* (1970), 399 U.S. 149, 175 (Harlan, J., concurring); Note, 57 U. Cin. L. Rev., *supra,* at 1562-1564. More importantly, from our perspective, that view has never been accepted by a majority of the justices. *Craig, supra,* at ____, 110 S. Ct. at 3172, 111 L. Ed. 2d at 689 (Scalia, J., dissenting).

reasonably communicate." Md. Courts & Judicial Proc. Code (1989), Section 9-102(a)(1)(ii). In upholding this statute, the court established a three-part test:

"The requisite finding of necessity must of course be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. * * * The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. * * * Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.' * * *" *Craig, supra,* at ____, 110 S. Ct. at 3169, 111 L. Ed. 2d at 685.

We will apply this test to the Ohio statute to determine whether a violation of the federal Constitution has occurred.

As noted *supra,* before a videotaped deposition produced in accord with R.C. 2907.41(A) may be admitted into evidence at trial, R.C. 2907.41(B)(1)(b) requires that the court find "there is reasonable cause to believe that if the child victim who gave the testimony in the deposition were to testify in person at the proceeding, the child victim would experience serious emotional trauma as a result of his participation at the proceeding." Though the defendant is denied a physical confrontation, he is still provided a full opportunity, through counsel, to cross-examine the witness. He is able to observe the demeanor of the witness on the video monitor. There is no significant difference between this statute and the one approved in *Craig.*[5] Accordingly, we hold that the use, in accord with R.C. 2907.41(A) and (B), of a child sexual abuse victim's videotaped deposition at trial in place of live testimony does not violate a defendant's right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution.

We must also determine whether this procedure violates the right of confrontation as guaranteed by Section 10, Article I of the Ohio Constitution. Our interpretation of Section 10, Article I has paralleled the United States Supreme Court's interpretation of the Sixth Amendment: the primary purpose of our Confrontation Clause "is to provide the accused an opportunity for cross-examination." *Henderson, supra,* at 188, 27 O.O. 2d at 60, 198 N.E. 2d at 458; see, also, *State* v. *Spikes* (1981), 67 Ohio St. 2d 405, 412-413, 21 O.O. 3d 254, 259, 423 N.E. 2d 1122, 1128-1129; *State* v. *Madison* (1980), 64 Ohio St. 2d 322, 330-331, 18 O.O. 3d 491, 496-497, 415 N.E. 2d 272, 277; *Swiger, supra,* at 162-163, 34 O.O. 2d at 277, 214 N.E. 2d at 426. For example, Ohio courts have long recognized that certain hearsay evidence could

___

[5] We do not believe that the Maryland standard for degree of emotional distress — "serious emotional distress such that the child cannot reasonably communicate," Md. Courts & Judicial Proc. Code, Section 9-102(a)(1)(ii) — is materially different from Ohio's "serious emotional trauma" standard. Further, we note that Ohio's requirement that the defendant be visible to the witness makes R.C. 2907.41 less intrusive on the defendant's confrontation right than the Maryland statute, which contains no such requirement. See *State* v. *Eastham* (1988), 39 Ohio St. 3d 307, 310, 530 N.E. 2d 409, 412, fn. 5.

be introduced by the state in criminal prosecutions without violating the defendant's right of confrontation. See, *e.g., State* v. *Walker* (1978), 53 Ohio St. 2d 192, 7 O.O. 3d 368, 374 N.E. 2d 132 (police log book); *State* v. *Colvin* (1969), 19 Ohio St. 2d 86, 48 O.O. 2d 94, 249 N.E. 2d 784 (certified records of State Dental Board); *Summons* v. *State* (1856), 5 Ohio St. 293, paragraph two of the syllabus (former testimony of deceased declarant); see, also, *State* v. *Phillips* (1951), 90 Ohio App. 44, 46 O.O. 343, 103 N.E. 2d 14 (admission of hospital records does not deprive defendant of a fair trial).

Though our Constitution uses the specific phrase "face to face," that phrase has not been judicially interpreted at its literal extreme. See *Madison, supra,* at 332-334, 18 O.O. 3d at 498-499, 415 N.E. 2d at 278-279 (P. Brown, J., dissenting).[6] This is because the purpose of the "face to face" clause of the Ohio Constitution (as well as the parallel provision of the Sixth Amendment) is to guarantee the opportunity to cross-examine and the right to observe the proceeding. Taking the phrase "face to face" to its outer limits, one could argue that a witness who looks away from the defendant while testifying is not meeting the defendant "face to face." As we have indicated, a criminal defendant is ordinarily entitled to a physical confrontation with the accusing witnesses in the courtroom. Yet, the value which lies at the core of the Confrontation Clauses does not depend on an "eyeball to eyeball" stare-down. Rather, the underlying value is grounded upon the opportunity to observe and to cross-examine. The physical distance between the witness and the accused, and the particular seating arrangement of the courtroom, are not at the heart of the confrontation right.

While closed-circuit television and videotape recording did not exist when the Ohio (or federal) Constitution was written and adopted, these new technologies, when employed in accord with R.C. 2907.41, provide a means for the defendant to exercise the right of cross-examination and to observe the proceedings against him with the same particularity as if he and the witness were in the same room. In no sense is the defendant barred from questioning the witness or the proceeding converted to a secret or "Star Chamber" affair.

Accordingly, we conclude that Section 10, Article I provides no greater right of confrontation than the Sixth Amendment, and hold that the use, in accord with R.C. 2907.41(A) and (B), of a child sexual abuse victim's videotaped deposition at trial in place of live testimony does not violate a defendant's right of confrontation guaranteed by Section 10, Article I of the Ohio Constitution.

---

[6] The dissenting justice in *Madison, supra,* argued that our decision in *State* v. *Wing* (1902), 66 Ohio St. 407, 64 N.E. 514, which invalidated the admission of testimony given at a former trial, supported the view that the Ohio Constitution creates a greater confrontation right than does the federal Constitution. However, a close examination of *Wing* reveals that it is based primarily on obsolete principles of territorial jurisdiction. Further, the *Wing* court noted that, though the prosecution had shown that the declarant was outside the state boundaries, it had not shown that the declarant was unavailable, since, "[b]y adjournment or continuance of the case to a future time, she might have been found and produced in court." *Id.* at 426, 64 N.E. at 518.

## C

### Constitutionality of the videotaped deposition procedure used in the instant case

Appellee argues, and the court below held, that the use of Angela's videotaped deposition at his trial was unconstitutional because the state failed to make the requisite showing of necessity. We do not agree.

The court of appeals based its conclusion, in part, on Eckerson's testimony that, though Angela would suffer *serious* emotional distress if required to testify in appellee's presence, the injury would not be *permanent.* R.C. 2907.41(B)(1)(b) requires a showing of "serious emotional trauma." We do not believe that a showing of serious emotional trauma requires proof of permanent injury. The word "serious" defines the *degree* of the emotional injury which would occur when the child testifies, not the duration of that injury. A serious trauma is not converted into something less because the injured person may later recover. Further, R.C. 2907.41 is a detailed and carefully-drafted statute; had the General Assembly intended to require "*permanent* emotional trauma," it could have used the word "permanent."

Nor do our Constitutions require a showing that the witness would suffer permanent trauma before the videotaped deposition may be used. The *Craig* court held that the state need only show "that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis* * * *." *Craig, supra,* at ___, 110 S. Ct. at 3169, 111 L. Ed. 2d at 685. Like R.C. 2907.41, the Maryland statute, which "clearly suffice[d] to meet [federal] constitutional standards," *id.,* contains no express requirement that the witness suffer *permanent* emotional trauma. We are persuaded that the Ohio Constitution is also satisfied if the test enunciated in *Craig* is met.

Accordingly, we hold that to admit a child-victim's videotaped deposition under R.C. 2907.41(B)(1)(b), a finding must be made that the child would experience serious emotional trauma if required to testify in open court. Permanent injury need not be proven to establish serious emotional trauma.

Appellee further contends that the evidence does not support the trial court's findings that Angela would suffer serious emotional trauma if required to testify in her father's presence. He argues that the court's conclusion was tainted by a general assumption that testimony in open court is inherently traumatic for victims of sexual abuse. He points to certain comments by the trial judge at the hearing on the motion:

"* * * I am seriously considering that this section 2907.41, is a useful tool which was passed by the legislature. At times this Court, in its experience, has seen children testifying and they at times are in a world of their own. I think this tool is a useful tool. I'm sure this child doesn't want to see this Defendant. Therefore, this court is going to lean to that."

For purposes of analysis, we accept appellee's contention that the trial court was predisposed toward using the videotaped deposition procedure. However, our task as a reviewing court is to determine whether the court's findings are supported by competent, credible evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus.

Eckerson testified that "* * * it would be extremely difficult for * * * [Angela], emotionally difficult for her to appear in court in the presence of her father and tell the Court what occurred to her. I feel that it would be *ex-*

*tremely traumatic* for her and I obviously feel that videotaping would definitely be to her advantage. * * *" (Emphasis added.) On cross-examination, Eckerson further stated that Angela "* * * would definitely relive the trauma if she had to be sitting here facing her father. There is a lot of emotions that go into that. She's not cut off from him by any means. It's my opinion that's something we would have to work through in therapy, that it would be traumatic for her. * * *"

Appellee suggests that Eckerson's testimony was not credible due to bias caused by her "therapeutic relationship" with Angela. Appellee did not make this argument in opposing the prosecutor's motion to present Angela's testimony on videotape,[7] or in moving for a new trial. Thus, this argument is waived, and we will not reverse unless appellee can demonstrate plain error. *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804.

More significantly, our review of the record reveals nothing in Eckerson's relationship with Angela which renders Eckerson's testimony not credible. Her testimony provides a basis for the required finding that Angela would suffer "serious emotional trauma" if required to testify in her father's presence. It was not controverted. Thus, the statutory and constitutional requirements for a showing of "serious emotional trauma" were met.

Finally, appellee argues that the court should have appointed an independent expert to evaluate Angela rather than rely on Eckerson's testimony. We find no abuse of discretion by the trial court in refusing to engage an independent expert to evaluate Angela.

This case is distinguishable from both *Coy* v. *Iowa* and *State* v. *Eastham* (1988), 39 Ohio St. 3d 307, 530 N.E. 2d 409. In both of those cases, the trial court restricted the defendant's confrontation rights without making case-specific findings of necessity. *Coy, supra,* at 1025 (O'Connor, J., concurring); *Eastham, supra,* at 310, 530 N.E. 2d at 412. Here, the trial court made a case-specific finding that the child witness would be seriously traumatized by the presence of the defendant.

Accordingly, we hold that the presentation of Angela's testimony through the use of a videotaped deposition was proper and reverse the court of appeals on this issue.

## II
### *Admission of Hearsay Statements*

The prosecution presented testimony from Eckerson, Angela's psychotherapist, and O'Farrell, a case worker, relating the content of Angela's statements to them. In both hearsay statements, Angela stated that appellee had sexually assaulted her, and gave an account of the assault which did not materially differ from her videotaped deposition testimony. The court of appeals held that these statements were inadmissible hearsay.

As we have noted, some hearsay statements are admissible in criminal prosecutions, but only when, after a

---

[7] Not only did appellee not challenge Eckerson's credibility in the trial court, appellee also presented testimony at the same hearing which tended to support it. Stephanie Wyler Linder, appellee's counsel in the companion custody case in juvenile court, testified that she had recommended Eckerson (and her associate, Dr. Stephen Katkin) to appellee and the juvenile court because she believed that Eckerson (and Katkin) would give a fair and impartial evaluation.

good faith effort by the prosecution to produce her, the declarant is unavailable to testify in court. *Roberts, supra,* at 74. In the instant case, Angela cannot be said to have been unavailable to testify since she appeared and gave testimony, albeit on videotape. Thus, the threshold test established by *Roberts* has not been met, and the statements were inadmissible.[8]

However, we find this to be harmless error. Before Eckerson and O'Farrell took the stand, the prosecution had presented Angela's videotaped deposition. In it, Angela described appellee's attack on her in detail, and was subjected to a thorough cross-examination. Further, the prosecution presented medical testimony, primarily from Dr. Shapiro, that Angela's physical injuries were the product of sexual abuse and could not have been caused accidentally. Given the overwhelming evidence of guilt, it is clear beyond reasonable doubt that the admission of these hearsay statements did not prejudice the appellee. *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 17 O.O. 3d 92, 407 N.E. 2d 1268.

## III
### *Conclusion*

For the foregoing reasons, we reverse the judgment of the court of appeals, and reinstate appellee's convictions and sentence.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

---

[8] Accordingly, we express no opinion on whether these statements would have been admissible under Evid. R. 803(4), the medical diagnosis and treatment exception to the hearsay rule, had Angela been unavailable.