INTRODUCTION
 OPINION
Defendant-appellant, Nathaniel Gresham, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of child endangering pursuant to R.C. 2919.22(B)(3). Gresham was convicted of the offense following a jury trial, and the trial court sentenced him to a term of eight years' incarceration. On appeal, Gresham has asserted six assignments of error. Finding none of the assignments to have merit, we affirm the judgment of the trial court.
FACTS
The record discloses that Gresham resided with his wife, Mairaliz Soto-Gresham, and her four-year-old son, Antonio Pruitt.[1] On the morning of October 16, 1998, Soto-Gresham left Tony in Gresham's care so that she could go to work. She returned home that evening at 5:45 to find Tony sitting on the couch. Tony was unusually quiet, but Soto-Gresham attributed this to the fact that Tony had been ill for the past two days.
Later, Gresham put Tony to bed, and he and Soto-Gresham retired. The following day, Gresham told Soto-Gresham that while she was at work, Tony had "soiled" himself and that he had suffered burns when Gresham attempted to bathe him. Soto-Gresham testified that Gresham told her that he briefly left the child alone in the bathtub and that when he returned, he discovered that Tony had turned on the hot-water facet. Because of the severity of the burns, they took Tony to the Children's Hospital emergency room. Later that day, Tony was referred to nearby Shriners Burns Hospital.
Tony was a patient at Shriners for approximately one month. During his stay, he underwent painful dressing changes twice a day. He also underwent two skin-graft operations. According to Tony's surgeon at Shriners, Dr. Glenn Warden, Tony had suffered third-degree burns, which were consistent with the child being held in 130-degree water for thirty seconds. In Dr. Warden's opinion, the burns were inconsistent with being self-inflicted.
Soto-Gresham testified that she believed Gresham when he told her that Tony had turned the hot water on by himself. However, she testified that she had agreed to tell the authorities that it was she who had left Tony unattended in the tub to protect Gresham from blame. Despite her assertion, investigators soon focused their investigation upon Gresham. Officer Michael Miller told Soto-Gresham that he did not believe her to be capable of inflicting the injuries upon Tony. Thereafter, Soto-Gresham admitted that the injuries had occurred while Tony was in Gresham's care. Tony's trial testimony, presented via videotaped deposition, confirmed that it was Gresham who had placed him in the tub.
Prior to trial, Gresham gave several different accounts of how the injuries occurred but persisted in stating that the incident occurred while Tony was in the care of Soto-Gresham. At trial, Gresham claimed that while he was away, Soto-Gresham had become frustrated with Tony and that she had inflicted the injuries.
ASSIGNMENTS OF ERROR
In his first assignment of error, Gresham argues that the lower court erred by declaring Tony to be competent to testify, because there was no proof that he knew truth from falsehood and that he was capable of relating the truth. We are unpersuaded.
It is the trial court's responsibility to determine, through questioning, whether a child of tender years is capable of receiving just impressions of facts and events and of accurately relating them. The determination is within the sound discretion of the trial court, which has the opportunity to observe the child's appearance, his general demeanor and manner of responding to questions, and any other indicia of ability to relate the facts accurately and truthfully.[2] Thus, the trial court's decision will not be reversed absent an abuse of that discretion.[3] An abuse of discretion is more than an error of law or of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[4]
Prior to trial, the court held a hearing to determine whether Tony was competent to testify.[5] During that hearing, Tony stated "bad" in response to the court's question whether it was good or bad to tell a lie. He also nodded affirmatively that he was telling the truth. Tony also demonstrated the ability to receive just impressions of facts and relate them truly. He was able to relate facts such as his age, the name of his teacher, and the circumstances of his family life.
Gresham contends, however, that several inappropriate or illogical responses on the part of Tony indicated that he was not competent to testify. This argument is not well taken. We agree with the state that, in the context of the examination by the court, the allegedly inappropriate responses were responsive and logical. Moreover, even if some of the answers cited by Gresham were not responsive or were illogical, we cannot say that the trial court abused its discretion in concluding that, based upon the entirety of the examination, Tony was competent to testify. This conclusion is reinforced by the fact that defense counsel, an experienced criminal trial attorney who was present when the questions were asked, acknowledged that Tony "did pretty well" and "seems to know the difference between the truth and a lie."
Under these circumstances, we hold that the trial court did not abuse its discretion by finding that Tony was competent to be a witness. Therefore, the first assignment of error is overruled.
In his second assignment of error, Gresham maintains that the lower court erred by permitting Tony to testify via a videotaped deposition at which Gresham was not present. We disagree.
Following Tony's competency hearing, the trial court ruled that Tony would be permitted to testify by way of closed-circuit television, out of Gresham's presence. Gresham objected to this procedure on the basis that it denied him his right of confrontation.
At the time of the proceedings below, R.C. 2907.41 (now R.C.2945.481) provided for taking the deposition of a child under the age of eleven years under certain circumstances. Further, the statute provided that the deposition could be introduced at an accused's trial if the trial court found, inter alia, that the accused had the opportunity to examine the child and there was reasonable cause to believe that, if the child were to testify in person at trial, the child would experience serious emotional trauma.[6] The emotional injury did not have to be permanent in order for the trial court to invoke the rule.[7]
The Supreme Court of Ohio, in giving its imprimatur to this procedure, observed:
However, physical confrontation may constitutionally be denied where the denial is necessary to further an important public policy and "the reliability of the testimony is otherwise assured." For example, there are circumstances under which hearsay statements are admissible in criminal prosecutions, despite the inability of the accused to physically confront the declarant. The United States Supreme Court has recognized that an adequate opportunity to cross-examine may satisfy the clause in the absence of physical confrontation.[8]
As a reviewing court, we are constrained to affirm the decision of the trial court to permit the videotaped testimony if the court's findings were supported by competent, credible evidence.[9]
Here, the lower court found, in its entry granting the state's motion to permit Tony to testify by closed-circuit television, the elements required by R.C. 2907.41.[10] The court found that Tony had indicated to various persons, expressly and by his conduct, a fear of Gresham that would have made it impossible for Tony to testify in Gresham's presence. Following the January 6, 1999, hearing on Tony's competency to testify, the lower court also observed that Tony was fearful of Gresham to the extent that Tony did not want to talk about him.
Our review of the record convinces us that the lower court's findings with respect to the use of the videotape were supported by competent, credible evidence.[11] The trial court conducted an evidentiary hearing on December 21, 1998. At that hearing, social worker Laura Monhollen testified that she had seen Tony on a daily basis at the hospital and also during his periodic visits to the clinic following his release. Monhollen testified that Tony became withdrawn when discussing the circumstances of his injuries and in particular appeared frightened when Gresham was mentioned. She expressed the opinion that Tony would be traumatized by face-to-face confrontation with Gresham. Thus, the trial court was presented with substantial evidence that supported invoking the procedure provided by R.C. 2907.41.
Moreover, during the proceedings that culminated in the competency determination, the court had been acquainted with the underlying allegations and had had a full opportunity to observe Tony's demeanor when he spoke about Gresham. Thus, the trial court was in the best position to evaluate whether Tony would suffer serious emotional trauma if physically confronted by Gresham.
As the state aptly notes, it is not necessary for a child to actually confront the defendant and thereby suffer emotional trauma as a prerequisite to receiving the protections afforded by R.C. 2945.481. In the case at bar, the state provided an ample evidentiary basis upon which the trial court could have found that face-to-face confrontation would have resulted in serious emotional trauma. Accordingly, Gresham's second assignment of error is overruled.
In Gresham's third assignment of error, he claims that trial court erred in admitting into evidence hearsay accounts of how Tony was injured. We disagree.
The record reveals that Jonda Proffit, R.N. was a witness called by the state. She testified that she was employed at Shriners and that her duties included bathing Tony's injuries and changing his dressings. Ms. Proffit was permitted to testify, over Gresham's objection, that Tony was extremely quiet during one treatment. When Ms. Proffit asked Tony what was wrong, he responded, "[Gresham] put me in the bathtub."[12]
Gresham contends that this testimony constituted impermissible hearsay. The state responds that the statement was admissible under two exceptions to the hearsay rule, specifically under Evid.R. 803(2) as an excited utterance and under Evid R. 803(4) as a "[s]tatement made for medical diagnosis or treatment."
We need not decide whether the contested statement fell within the exceptions to the hearsay rule. Even were we to find error in the admission of the statement, the error would be harmless beyond a reasonable doubt. Evidence as to who placed Tony in the tub was contained in Tony's deposition testimony, in Soto-Gresham's trial testimony that Tony was in the care of Gresham when the injuries occurred, and in the statement that Gresham himself made to Soto-Gresham. Thus, the statement made at the hospital, even if objectionable, was merely cumulative to other evidence found in the record.[13] For the foregoing reasons, Gresham's third assignment of error is overruled.
In the fourth assignment of error, Gresham maintains that the trial court erred by admitting into evidence photographs of Tony's injuries, including photographs of the sites from which his skin grafts were taken, because they were unnecessarily gruesome and not necessary to prove any contested issue. The assignment is without merit.
Initially, we note that the admission or exclusion of evidence is committed to the sound discretion of the trial court, and its rulings will not be reversed by a reviewing court absent an abuse of that discretion.[14] Even gruesome photographs are admissible at trial as long as their probative value outweighs the danger that prejudice will be visited upon the accused.[15]
We find no abuse of discretion in the case at bar. The photographs presented to the jury, while admittedly gruesome, were relevant to demonstrate the element of "serious physical harm" pursuant to R.C. 2919.22(E)(3). Gresham's contention that the photographs were not pertinent to any contested issue is therefore not well taken. There is no indication in the record that the element of serious physical harm was stipulated by defense counsel or that the state offered to accept any stipulations. Moreover, even were we to accept Gresham's suggestion that the introduction of the skin-graft photographs was unnecessary because the injuries were depicted in other photographs, we could not say that the trial court's decision was unreasonable, arbitrary or unconscionable. Accordingly, Gresham's fourth assignment of error is overruled.
In his fifth assignment of error, Gresham asserts that the lower court erred by denying his Crim.R. 29 motion for judgment of acquittal and by entering judgment on the jury's verdict, because it was not supported by sufficient evidence. In the review of the sufficiency of the evidence to support a criminal conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[16] The standard of review for the denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency.[17]
R.C. 2919.22(B)(3), governing child endangering, provides that no person shall do the following to a child under eighteen years of age: "[a]dminister corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child * * *." R.C. 2919.22(E)(3) provides that, if the violation results in serious physical harm to the victim, the offense is a felony of the second degree.
In the instant case, the prosecution presented ample evidence of each of the elements of the charged offense. The testimony of the child, the circumstance of the child being left alone with Gresham, extensive medical evidence, and Gresham's own statement to Soto-Gresham all tended to establish that Gresham had disciplined Tony by placing him in scalding water and that Tony had suffered third-degree burns as a result of Gresham's actions. Based upon this evidence, a rational trier of fact could have found each of the elements of child endangering proven beyond a reasonable doubt. The fifth assignment of error is therefore overruled.
In his sixth and final assignment of error, Gresham maintains that the lower court erred by imposing the maximum sentence upon him. Specifically, he claims that the trial court's finding pursuant to R.C. 2929.14(C) is not supported by the record.
To impose a maximum term of incarceration, the trial court must find one of the factors enumerated in R.C. 2929.14(C) to be applicable.[18] In the instant case, the court found that Gresham had committed "the worst form of the offense." While this court has grappled with this concept in the past,[19] we do not hesitate in holding that the trial court's finding in this case was supported by the record. Gresham inflicted extreme physical pain upon a four-year-old boy by holding him in scalding water. The injuries that were inflicted necessitated extensive medical care, including multiple surgical procedures. Further, as the trial court found, Gresham grossly violated a duty of trust that he had accepted as the child's stepfather. Under these circumstances, the trial court was fully justified in imposing the maximum sentence. Therefore, the sixth assignment of error is overruled, and the judgment of the court of common pleas is affirmed.
Judgment affirmed.
 Gorman and Painter, JJ., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] Antonio is referred to throughout the record as "Tony."
[2] State v. Frazier (1991), 61 Ohio St.3d 247, 251,574 N.E.2d 483, 486-487.
[3] Id. at 252, 574 N.E.2d at 487
[4] State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144,149.
[5] Evid.R. 601 provides, that every person is competent to be a witness except "[t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
[6] See R.C. 2907.41 and 2945.481(B)(1)(b). It appears from the record that the procedures prescribed by the statute as to cross-examination and related safeguards were followed.
[7] State v. Self (1990), 56 Ohio St.3d 73, 79, 564 N.E.2d 446,453.
[8] Id. at 77, 564 N.E.2d at 451 (citations omitted).
[9] Id. at 80, 564 N.E.2d at 453.
[10] On appeal, Gresham suggests that the trial court's findings referred only to the trauma that Tony would experience due to the intimidating atmosphere of the courtroom. On the contrary, the trial court's findings specifically refer to the trauma that would likely result from face-to-face confrontation with Gresham.
[11] See Self, supra.
[12] Ms. Proffit's account of this event was corroborated by two other hospital employees.
[13] See State v. Weathersby (Dec. 4, 1998), Hamilton App. No. C-971055, unreported.
[14] State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.
[15] State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus.
[16] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819, 825.
[17] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[18] State v. Kershaw (Feb. 5, 1999), Hamilton App. No. C-980164, unreported.
[19] See id.