[Cite as *State v. Jones*, 2011-Ohio-2362.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 10 CA 69 |
| MARVEL JONES | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                            Pleas, Case No.  2009 CR 258D


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 17, 2011


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JAMES J. MAYER, JR.                   JEFFEREY R. STIFFLER
PROSECUTING ATTORNEY                  DAVID C. BADNELL CO., LPA
KIRSTEN L. PSCHOLKA-GARTNER           21 North Walnut Street
ASSISTANT PROSECUTOR                  Mansfield, Ohio  44902
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1} Appellant Marvel Jones appeals from his conviction, in the Court of Common Pleas, Richland County, for multiple counts of felonious assault. The relevant facts leading to this appeal are as follows.

{¶2} On September 2, 2008, appellant was an inmate at the Mansfield Correctional Institution. On that day, while corrections officers in the Local Control Unit of that facility were in the process of serving food trays, appellant's cellmate, Guy Cheers, threw a cup of urine through the cell door opening at Corrections Officer Kevin Davis and tried to grab his keys and watch. After the incident was reported to superiors, additional correctional staff conducted a "shake-down" search of the cell. Appellant and Cheers were both placed in restraints. However, appellant and Cheers got free of their restraints and got into a physical altercation with some of the officers. During the incident, Corrections Officer Neal Prichard was thrown to the floor and sustained a triple fracture to his ankle.

{¶3} Appellant was thereafter charged with one count of felonious assault under R.C. 2903.11(A)(1), a second-degree felony, and three counts of aiding and abetting assault under R.C. 2903.13(A)/(C)(2)(a), fifth-degree felonies. The case proceeded to a jury trial on May 21, 2010. As further discussed infra, Cheers testified via live closed-circuit video.  The jury found appellant guilty on all four counts as charged. Appellant immediately filed a motion for a new trial, which the trial court subsequently denied.

{¶4} On May 24, 2010, appellant was sentenced to seven years on the second-degree felony assault. The court merged one of the fifth-degree felony assaults into the

aforesaid second-degree felony assault count. The court further sentenced appellant to six months on each of the two remaining fifth-degree felony assault counts, all consecutive. The total term was thus eight years in prison.

{¶5} On June 2, 2010, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

{¶6} "I. APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WERE VIOLATED.

{¶7} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL.

{¶8} "III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶9} In his First Assignment of Error, appellant argues the trial court violated his constitutional rights by having his sole defense witness, former cellmate Guy Cheers, testify via closed circuit television. We disagree.

{¶10} The Confrontation Clause found in the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." This clause reflects a preference for face-to-face confrontation at trial. See *Maryland v. Craig* (1990), 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666; *State v. Self* (1990), 56 Ohio St.3d 73, 77, 564 N.E.2d at 450. It contains a two-fold right for presenting a defense: It "guarantees a criminal defendant the right to present witnesses in his or her

own behalf and to use the power of the court to compel the attendance of those witnesses, if necessary." *State v. Brock*, Montgomery App.No. 19291, 2002-Ohio-7292, ¶ 11, citing *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. However, the right to compulsory process as guaranteed by the Sixth Amendment and Article I, Section 10 of the Ohio Constitution is not an unlimited right. *State v. Toles* (May 26, 1998), Stark App.No. 97-CA-0139, 1998 WL 400881. An exception must (1) be justified on a case-specific finding based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation -- oath, cross-examination, and observation of the witness's demeanor. *State v. Marcinick*, Cuyahoga App.No. 89736, 2008-Ohio-3553, ¶ 18, citing *Harrell v. State* (Fla. 1998), 709 So.2d 1364, 1369. Furthermore, a defendant's conviction will generally not be reversed on the basis of a constitutional error if the error is found to be harmless beyond a reasonable doubt. See, e.g., *State v. Walker* (Feb. 20, 2001), Stark App.No. 2000CA00128, citing *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

{¶11} In the case sub judice, apparently both the prosecutor and defense counsel considered calling Cheers as a witness; however, the prosecutor obtained a conveyance order directing Cheers to be released into the custody of the Richland County Sheriff, while defense counsel obtained an order for Cheers to be conveyed directly by the Ohio Department of Corrections. Due to the conflicting motions/orders, Cheers was not conveyed at all. A conference at the bench ensued as follows:

{¶12} "[DEFENSE COUNSEL] MR. KEYSER:  We wanted to call Guy Cheers, but apparently he never got conveyed here.  My secretary called Lucasville, and they

said they got an order from the prosecutor that said the sheriff of Richland County was going to convey him.

"THE COURT: That is not true. I talked to my staff just now, both of my staff people. In fact, Karen spoke with them at the Ohio Correctional Institution on Tuesday and said that he needed to be transported, and they said they would do it.

"MR. KEYSER: He is not here.

"THE COURT: Uhm-hum. What are you asking?

"MR. KEYSER: Asking for time to get him here.

"THE COURT: Okay. Did you check yesterday and the day before whether he was actually transported or not?

"MR. KEYSER: Yes.

"THE COURT: You know, I am very much troubled when you wait until last night to tell me he isn't here and needs to be transported. That is something you needed to be checking on.

"MR. KEYSER: I was checking on it everyday.

"THE COURT: What do you think he is going to testify to?

"MR. KEYSER: What do I think?

"THE COURT: Uhm-hum.

"MR. KEYSER: The events of what occurred.

"THE COURT: Mr. Bishop?

"[ASSISTANT PROSECUTOR] MR. BISHOP: I have no dog in this race, Your Honor. I had at one time entertained the thought of calling Mr. Cheers as a witness and determined that it wouldn't benefit the state's case, so I didn't do anything more

with it. I was going to talk with him, anticipating he would be transported here, and talk to him and hear him tell me that he wasn't going to help me, you know.

"THE COURT: Uhm-hum.

"MR. BISHOP: But then I have no interest in securing his attendance at this point.

"THE COURT: Okay.

"MR. BISHOP: One way or the other.

"THE COURT: Shall we press forward without the witness?

"MR. BISHOP: I think so. I think the idea here is that if you want witnesses present and you know they are incarcerated, you need to make arrangements to get them conveyed, the same burden we would have had if we wanted to call them.

"THE COURT: He did submit a conveyance order. The conveyance order was delivered to the prison. The prison didn't deliver him here.

"MR. BISHOP: Do we have any idea how long it would take them to get him here? Can they get him here today, this morning, this afternoon?

"MR. KEYSER: I don't know.

"MR. BISHOP: We don't even know?

"THE COURT: We will have to check into that." Tr. at 155-157.

{¶13} Upon review, we find the trial court properly allowed an exception to face-to-face confrontation of witness Cheers based on the unusual exigencies of the case and the interest of conserving judicial resources. A review of the transcript indicates that Cheers was placed under oath, allowed to respond to direct and cross-examination questions, and was observable by the members of the jury. Appellant

urges that Cheers was prevented from tying his testimony in with the prison security video of the incident. However, the video in question (see footnote 1, infra) was actually introduced by the State to buttress the testimony of the corrections officers, as further analyzed infra, and we are unpersuaded that its non-utilization by Cheers because of the logistics of his closed-circuit testimony was more than harmless error.

{¶14} Appellant's First Assignment of Error is overruled.

II.

{¶15} In his Second Assignment of Error, appellant argues the trial court erred in denying his motion for a new trial. We disagree.

{¶16} Crim.R. 33 controls new trial motions in criminal cases. The rule states in pertinent part:

{¶17} "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial. ***."

{¶18} Motions for new trial are addressed to the sound discretion of the trial court, and an appellate court will generally not reverse unless it finds the trial court abused its discretion. See *State v. Schiebel* (1990) 55 Ohio St.3d 71, 76, 564 N.E.2d 54. The term abuse of discretion implies the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

{¶19} For reasons similar to our discussion regarding appellant's first assigned error, we are unable to conclude the trial court abused its discretion in denying

appellant's motion for a new trial. Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶20}** In his Third Assignment of Error, appellant maintains his felonious assault convictions are against the manifest weight of the evidence. We disagree.

**{¶21}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶22}** The bulk of the State's evidence in the case sub judice consisted of a prison surveillance video, and the testimony of the corrections officers involved in the incident of September 2, 2008.[1] Defense counsel utilized closed-circuit testimony of Inmate Cheers, as discussed supra. We will herein review the testimony of Cheers and each officer.

---

[1] The video system utilized in this instance was a scanning type for showing random images of the prison area in question. Furthermore, we note the transcript contains the additional testimony of Correction Officer Kevin Davis and a staff nurse who responded to the injuries; in the interest of judicial economy, we will not restate their testimony.

Corrections Officer Prichard

{¶23} Officer Prichard testified that he is a five-year veteran of the corrections service of the prison. On September 2, 2008, he was engaged in interviewing inmates in the segregation unit when the captain on duty directed him to report to the Local Control Unit because of Cheers' urine-throwing incident. He recalled that Lieutenant Page made the decision to conduct a shakedown of the cell. Appellant and Cheers told the officers that they preferred to be cuffed from the front, rather than from the back, and the decision was made to cuff the two inmates accordingly and remove them from the cell. Prichard and Officer Jacobs then proceeded with the search, while Lieutenant Page stayed with the two inmates outside the cell. Suddenly, Officer Jacobs ran back outside the cell, where Page had been forced to the ground by appellant and Cheers. Prichard followed Jacobs into the area and grabbed appellant's arm and one of the handcuffs, which had slipped off one of appellant's wrists. Appellant went on the offensive and threw Prichard down to the ground, putting his knee into the officer's face. After Officer Jacobs intervened and pulled appellant off, Prichard realized his ankle was not moving correctly.

Corrections Lieutenant Page

{¶24} According to Lieutenant Page, after he responded to the disturbance call and Cheers and appellant had been cuffed, he was "rushed" by the two inmates. He started "tussling" with Cheers, while Prichard struggled with appellant. While Officer Jacobs tried to help re-cuff Cheers, Prichard started falling toward the ground as appellant tried to punch him. Cheers, Page, and Jacobs also went toward the ground. Cheers was finally re-cuffed and placed back in the cell; Page and Jacobs then went to

help Prichard, who was being punched on the ground by appellant. Page saw that Prichard's foot was "mangled."

### Corrections Officer Jacobs

{¶25} Officer Jacobs told the jury he entered the cell with Officer Prichard to start the shakedown when he heard Lieutenant Page say something in the hallway. He saw appellant and Cheers pushing Page. He intervened and was ultimately punched in the jaw by Cheers; in the meantime, Prichard was yelling to Jacobs for assistance. He recalled that a "pile" consisting of himself, Page, and Cheers went to the ground. After Cheers was subdued, Jacobs saw Prichard up against the wall, with his left foot looking twisted.

### Inmate Cheers

{¶26} Cheers, who was in Mansfield Correctional on a twenty-one year to life term for murder, testified via live video as a defense witness that he threw the urine at Officer Davis because of an alleged racial remark. Cheers claimed that appellant was in his bunk at that time, and that after the two inmates were taken outside their cell, the officers "slammed" appellant to the floor for no reason. Cheers maintained that appellant was quickly forced back into the cell, while Cheers went on struggling by himself with Prichard, Page, and Jacobs.

### Analysis-Conclusion

{¶27} Appellant points out certain variances in the testimony, such as Officer Jacobs' indication that he did not see appellant strike Prichard, and Page's recollection that Cheers alone initiated the physical contact with Page. The record thus may reveal a limited number of such inconsistencies in the officers' versions of events, in addition

to Cheers' varying version of the altercation; however, as the State notes, the officers' inconsistencies can be reasonably attributed to the highly dangerous situation erupting in the cell area at the time. Upon review, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶28}**  Appellant's Third Assignment of Error is overruled.

**{¶29}**  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0425

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO : 
 : 
    Plaintiff-Appellee : 
 : 
-vs- :     JUDGMENT ENTRY
 : 
MARVEL JONES : 
 : 
    Defendant-Appellant :     Case No. 10 CA 69

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

Costs assessed to appellant.

_____

_____

_____

    JUDGES