[Cite as *State v. Butts*, 2012-Ohio-571.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA22 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| THOMAS R. BUTTS, | : | |
| | : | |
| | : | **RELEASED 02/07/12** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Benjamin E. Fickel, Logan, Ohio, for appellant.

Robert L. Lilley, Law Director, Logan, Ohio, for appellee.
_____
Harsha, J.

**{¶1}** Thomas Butts appeals his conviction for domestic violence claiming that the trial court violated his Sixth Amendment right of confrontation by admitting out-of-court statements made by the victim. Because there was no ongoing emergency and the victim's statements were made as part of an investigation into past criminal conduct, the hearsay statements were testimonial evidence. And because the declarant was never subject to cross-examination, we agree that Butts' constitutional rights were violated. Thus, we reverse his conviction.

I. FACTS

**{¶2}** After suffering a seizure, Thomas Butts was hospitalized. Following a telephone call with his girlfriend, Kendra Cain, he left the hospital without being discharged and went to her house where an incident between the two occurred. As a

result, Butts was charged with domestic violence and his case proceeded to a bench trial.

{¶3}   The record shows that Cain was subpoenaed by the prosecution; however, she did not appear at trial.  So, the state called Officer Mingus as its only witness.  Mingus testified that on the date in question the Logan Police Department received a complaint that a man was walking down the street in a hospital gown.  Before the officers could respond to that call, they received a second phone call indicating that a female was locked in a bedroom and a male was trying to force his way into the room.  Mingus stated that he and another officer responded to the calls.  When he arrived at the scene he found Butts sitting on the couch to his left and Cain was standing to his right.  He stated that they were separated by the other officer but were still "bickering back and forth."  Mingus indicated that Butts had EKG pads on his chest and also had marks on his face.  He testified that Butts told him that he and his girlfriend had a misunderstanding.

{¶4}   Mingus also testified that he spoke with Cain.  He testified that Cain was "extremely upset" at Butts "saying that he was threatening her."  The defense objected to Mingus' testimony as hearsay.  The trial court overruled the objection, finding that the statement was an excited utterance.  Mingus stated that it took him a "few minutes" to arrive at the scene and he began speaking with Cain immediately upon his arrival.  He testified that she was "upset, agitated, angry, [and] scared."  Again over the defense's hearsay objection, Mingus testified that Cain told him that Butts called her demanding that she come to the hospital.  When she refused, she said he left the hospital and came to her house.  Mingus further testified that Cain told him after Butts arrived, "he said he was going to beat her to a pulp and he was going to send his son to apparently

to take care of business."  Again Butts noted his objection.  Then, the state asked Mingus based on his training and experience, if he believed this statement caused Cain to fear for her physical safety.  He responded, "it certainly appeared that way."  Mingus also stated that Butts denied "he did anything wrong."

{¶5}    The trial court found Butts guilty of domestic violence in violation of the City of Logan Codified Ordinance 135.16(C) and sentenced him to thirty days in jail, with fifteen days suspended.  This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶6}    Butts presents five assignments of error for our review:

{¶7}    1. "THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR AND ABUSED ITS DISCRETION WHEN IT ADMITTED THE HEARSAY STATEMENTS OF THE ALLEGED VICTIM UNDER THE EXCITED UTTERANCE EXCEPTION (EVID.R. 803(2)) TO THE RULE AGAINST HEARSAY (EVID.R. 802)."

{¶8}    2.  "THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ADMITTED HEARSAY EVIDENCE MADE BY A DECLARANT WHO WAS NOT AVAILABLE FOR CROSS-EXAMINATION."

{¶9}    3. "THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR TO THE PREJUDICE OF THE APPELLANT WHEN IT RENDERED A DECISION BASED UPON INSUFFICIENT EVIDENCE."

{¶10}   4. "THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR TO THE PREJUDICE OF THE APPELLANT WHEN IT RENDERED A DECISION CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶11}** 5. "THE CUMULATIVE EFFECT OF ERRORS IN THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."

III. SIXTH AMENDMENT RIGHT TO CONFRONTATION

A. Legal Standard

**{¶12}** Because it is dispositive, we proceed with an analysis of Butts' second assignment of error, which raises a constitutional challenge to his conviction. Challenges concerning the scope and effect of constitutional protections, such as the Sixth Amendment, involve issues of law. See *State v. Knauff*, 4th Dist. No. 10CA900, 2011-Ohio-2725, at ¶48. Accordingly, we apply a de novo standard of review to alleged violations of a criminal defendant's Sixth Amendment right to confrontation. *State v. Osman*, 4th Dist. No. 09CA36, 2011-Ohio-4626, at ¶78.

**{¶13}** "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' * * * [T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington* (2004), 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177. "Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment * * * ." *State v. Self* (1990), 56 Ohio St.3d 73, 79, 564 N.E.2d 446. Thus, we will frame our review of Butts' argument in terms of the federal constitutional right of confrontation. See *Knauff*, supra.

**{¶14}** In *Crawford*, the United States Supreme Court held that testimonial out-of-court statements violate a defendant's rights under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, supra, 541 U.S. at 68. Although the Court failed to comprehensively define testimonial hearsay, it indicated that statements made under circumstances that

would lead an objective witness to reasonably believe they would be available for use at a later trial, including interrogations by law enforcement, fall squarely within that class. Id. at 52-53.

{¶15}  Subsequently in *Davis v. Washington*, (2006), 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224, the Court considered which police "interrogations" are considered testimonial.  The Court held that statements made during the course of police interrogations are nontestimonial "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. at 822.  Conversely, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id.  The Court clarified that "[w]hen we said in *Crawford* * * * that 'interrogations by law enforcement officers fall squarely within [the] class' of testimonial hearsay, we had immediately in mind * * * interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator.  The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory * * * of the interrogating officer, is testimonial." Id. at 826.

{¶16}  The facts of *Davis* revealed the victim called 911 during a domestic dispute with her boyfriend.  When the police arrived at the victim's residence, her boyfriend had already left and was later charged with violating a domestic no-contact order.  At trial, the victim did not appear to testify; therefore, to prove Davis caused her injuries, the prosecution played the victim's taped 911 phone call.

{¶17} Distinguishing the case from *Crawford*, the Court found the victim called 911 during an ongoing emergency, and the 911 operator's primary purpose for questioning her was to allow for police assistance. Furthermore, the victim described the events to the 911 operator as they happened, rather than simply as an explanation of past events. The testimonial statements in *Crawford*, however, involved police interrogation focused on past events that no longer involved an ongoing emergency. For these reasons the *Davis* Court found that that the victim's statements to the 911 operator were nontestimonial and thus did not violate the defendant's confrontation rights.

{¶18} The facts of *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224, are similar to our case. In *Hammon*, which was decided in conjunction with *Davis*, the police responded to a report of a domestic dispute at the victim's home where they observed evidence of a physical argument. After separate questioning, the victim admitted that her husband hit her. At trial, the wife did not testify against her husband; however, the responding officer testified and repeated the statements she made to him concerning the incident.

{¶19} The *Hammon* Court concluded that the wife's statements were testimonial because it was clear from the circumstances that her interrogation was part of an investigation into possibly criminal conduct. Id. at 829. Further, there was no emergency in progress, she told the police when they arrived that things were fine, and the officer questioning her was seeking to determine not what was happening but what had happened. Id. The Court concluded that when objectively viewed, the sole purpose of the investigation was to investigate a possible crime. Id.

{¶20}  In our case, Butts argues that the trial court violated his right to confrontation by allowing Officer Mingus to repeat what Cain told him.  Because there was no ongoing emergency during the police interrogation, he alleges her statements were testimonial and subject to the Confrontation Clause.  And, because Cain was never subject to cross-examination, he contends that his Sixth Amendment right to confrontation was violated.  The state concedes that by admitting out-of-court statements that were not subject to cross-examination, the trial court violated Butts' Sixth Amendment rights.  We agree.

{¶21}  The record shows Cain made her statements during a police interrogation. Officer Mingus testified that he responded to Cain's residence after the police department received a phone call indicating that she was locked in the bedroom and a man was trying to force his way in.   However, when Mingus arrived at the home a few minutes after the call, Butts and Cain were separated and she was no longer locked in the bedroom.  Thus, it is clear from the record that at the time of questioning Cain was no longer in immediate danger.  Moreover, Mingus explained that during his questioning Cain described past events to him concerning the incident with Butts.  Therefore, we conclude that Cain's statements made to Officer Mingus were testimonial because there was no longer an ongoing emergency and the purpose of the interrogation was primarily to establish past events that could be relevant to later criminal prosecution.  As a result, the trial court erred by allowing Mingus to repeat Cain's statements at trial when Butts did not have the opportunity to cross-examine her.

### B. Plain Error

{¶22}  A review of the record shows that Butts objected to Mingus' testimony at trial on the basis of hearsay only.  Because Butts did not object to Mingus' testimony on

the specific ground that he raises here on appeal, i.e. a violation of his constitutional right to confrontation, we must determine whether admission of the testimony amounted to plain error. See *State v. Richardson*, 4th Dist. No. 08CA3022, 2009-Ohio-923, at ¶14, 17.

{¶23} For plain error to exist there must be a plain or obvious error that affects "substantial rights," which has been interpreted to mean but for the error, the outcome of the trial clearly would have been otherwise. *State v. Rinehart*, 4th Dist. No. 07CA2983, 2008-Ohio-5770, at ¶18. "The defendant must demonstrate error on the record before we will find plain error." Id. In addition, we take notice of plain error "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." Id. Courts should notice plain error "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (Internal quotation marks omitted.) Id. After reviewing the record, it is obvious that the admission of hearsay affected both the fairness and the outcome of the trial.

{¶24} Butts was convicted of domestic violence in violation of Logan Codified Ordinance 135.16(C), which states "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Officer Mingus was the only witness called by the state at Butts' trial. He admitted that he arrived after the incident between Cain and Butts had ended and did not witness him threaten her. Mingus could not cross-examine his accuser because she failed to testify and he had no prior opportunity to confront her as the Sixth Amendment demands. Without Mingus' testimony concerning Cain's out-of-court statements, there was no evidence offered by the state to support his conviction for domestic violence.

## IV.  CONCLUSION

**{¶25}**  We conclude that allowing the testimony of Officer Mingus concerning Cain's statements seriously affected the fairness of the judicial proceeding and constituted plain error.  Therefore, we sustain Butts' second assignment of error and reverse his conviction.  Butts' remaining assignments of errors are rendered moot.  See App.R. 12(A)(1)(c).

JUDGMENT REVERSED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & Kline, J.:  Concur in Judgment and Opinion.

For the Court

BY:  _____
        William H. Harsha, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**