JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Chris Sanders appeals his conviction after a jury trial in the Cuyahoga County Court of Common Pleas. Finding no merit to the appeal, we affirm.
 {¶ 2} The victim, Terry Shaffer, testified that he knew Sanders for several months and was letting Sanders stay with him at his apartment in Fairview Park. The victim kept his money hidden in a hole in his mattress, and he testified that he told Sanders, prior to the incident, not to take the money because it was for rent and if he did not pay the rent, the two of them would not have a place to live. Then the victim placed the money in his pocket and went to sleep on the couch. In the morning, the victim awoke to Sanders hitting him in the head with a hammer. The victim testified that he said, "Why you doing this?" but Sanders just kept bashing him in the head with the hammer. Next, the victim remembers waking up in the hospital without his money.
 {¶ 3} According to a neighbor, the victim knocked on his door and when the neighbor answered, he saw the victim was bleeding profusely, could not speak, and was making gurgling sounds. The neighbor's wife called 911, at 9:19 a.m., while the victim staggered down the hallway. When the police arrived at 9:26 a.m., the victim was at a travel agency next to his apartment complex. He was taken to the hospital where he remained for seven days. The victim suffered multiple skull fractures, a fractured mandible, a fractured finger, and numerous lacerations requiring stitches.
 {¶ 4} After his arrest, Sanders spoke with Lt. Berger and made a written and an oral statement. In his written statement, Sanders explained that he, the victim, and "Grandpa"[1]
went to the victim's apartment to smoke crack cocaine. When they arrived, the victim said he did not have crack cocaine or any money. Then Sanders went to sleep but woke up in the morning when he heard the victim's cell phone ringing. According to Sanders' statement, "Grandpa" left between 9 and 10 a.m. Then the victim's cell phone rang again and Sanders answered it. Sanders claimed that a guy was on the phone asking the victim where his money was. Sanders said he then left the apartment because the guy on the phone was mad and was coming over to talk to the victim. Sanders contends he got on a bus and went back to his sister's place in Cleveland.
 {¶ 5} In a subsequent interview, Sanders asked Lt. Berger if they had found the hammer. Lt. Berger asked how he knew a hammer was involved in the incident, and Sanders said the other detective told him about it.
 {¶ 6} At trial, the evidence revealed that the victim had not received any incoming calls within the time frame alleged by Sanders. Further, the other detective testified that he never spoke with Sanders about the hammer.
 {¶ 7} Last, Sanders sent the victim a Christmas card from county jail wherein he told the victim to be at "Grandpa's" house on a certain date because Sanders would be calling him collect from jail. Sanders told the victim not to have anyone there besides "Grandpa." The victim never responded because he was afraid.
 {¶ 8} Sanders was convicted of two counts of felonious assault and one count of aggravated robbery. Sanders appeals, advancing three assignments of error for our review.
 {¶ 9} "I. The trial court erred in declaring Mr. Shaffer competent to testify."
 {¶ 10} Sanders argues that the victim was incompetent to testify because he was unable to consistently recall any of the facts leading up to, during, or immediately following the event. Sanders contends that because the victim stated he was having memory problems since the attack, he was not competent to testify. Basically Sanders is arguing that the victim is of unsound mind.
 {¶ 11} Competency determinations of the trial court will not be disturbed on appeal unless the court abused its discretion.State v. Clark (1994), 71 Ohio St.3d 466, 469. Evid.R. 601 states: "Every person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or relating them truly." See, also, R.C. 2317.01.
 {¶ 12} Here, the victim was forty years of age and had been diagnosed with mild mental retardation. The term "unsound mind" includes all forms of mental retardation. R.C. 1.02(C). Being of unsound mind, however, does not automatically render a witness incompetent to testify. State v. Grahek, Cuyahoga App. No. 81443, 2003-Ohio-2650, citing State v. Bradley (1989),42 Ohio St.3d 136. The Supreme Court of Ohio reiterated in Bradley that "`a person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'" 42 Ohio St.3d at 141, quoting State v. Wildman (1945),145 Ohio St. 379, paragraph three of the syllabus.
 {¶ 13} In this case, the trial court held a hearing and questioned the victim regarding his name, age, income, living arrangements, education, the date of the incident, and why he was in court. The victim was able to articulate and answer all questions except that he thought Ronald Reagan was the president and that he could not remember the exact date of the incident, but he knew it was before Christmas and within the previous four months. The state then questioned the victim regarding his understanding of the meaning of the truth and a lie. The victim was able to distinguish the two and knew it was wrong to tell a lie. Finally, the defense attorney questioned the victim regarding his statement that Ronald Reagan was the president and questioned him as to whether he had ever been indicted or been to prison.
 {¶ 14} The trial court ruled that the victim was competent to testify, and we agree. A review of the victim's testimony indicates that he was able to perceive, recollect, and relate facts truthfully. Although the victim was unable to recall some of the incident, imperfect recollection goes to the credibility of a witness; it does not, in itself, render a witness incompetent. Grahek, supra. Sanders' first assignment of error is overruled.
 {¶ 15} "II. Appellant's conviction for felonious assault and aggravated robbery was against the manifest weight of the evidence."
 {¶ 16} "III. The trial court erred by denying appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure."
 {¶ 17} Under these two assignments of error, Sanders argues that because the victim should have been deemed incompetent to testify and he was the only eyewitness, the remaining evidence was insufficient to sustain a conviction and the conviction is against the manifest weight of the evidence. Sanders contends that not only was the victim incompetent to testify, but also he was inconsistent and lacked credibility. In addition, Sanders argues he had an alibi.
 {¶ 18} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 20} As previously stated, the victim was competent to testify and, further, his testimony was sufficient to sustain a conviction. The victim testified that he woke up when Sanders hit him in the head with a hammer. He testified that he asked Sanders why he was doing this to him, but Sanders just kept hitting him in the head. The victim never wavered in his identification of Sanders. Further, Sanders' version of what happened was contradicted by the evidence of the cell phone bills. Last, Sanders did not put forth any alibi witness testimony to prove he was not in the victim's apartment when the victim was attacked. After viewing the evidence in a light most favorable to the prosecution, we find that a jury could find all the essential elements of the crimes proved beyond a reasonable doubt and Sanders' conviction is not against the manifest weight of the evidence. Sanders' second and third assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Mcmonagle, J., and Blackmon, J., concur.
[1] Both the victim and Sanders referred to Herrmann Gerhardt as "Grandpa." "Grandpa" was a friend of the victim and the victim's deceased wife. Before trial, "Grandpa" died shoveling snow. He was sixty-nine years old.