DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Ronald R. Pflug, Sr., appeals from a judgment entered against him by the Ottawa County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On March 4, 2004, the Ottawa County Grand Jury indicted appellant on one count of rape, a felony of the first degree in violation of R.C. 2907.02(A)(1)(c), and one count of sexual battery, a felony of the third degree in violation of R.C. 2907.03(A)(5). *Page 2 
 {¶ 3} Following the indictment, a number of pretrial motions were filed, including: 1) a motion by the state asking the trial court to call L.M., the complaining witness in this case, as the court's witness; 2) a motion by L.M.'s guardian ad litem requesting a determination as to L.M.'s competency to testify; and 3) a motion by defense counsel asking that R.C. 2945.482 be declared unconstitutional.
 {¶ 4} The state filed its motion requesting that the trial court call L.M. as the court's witness after learning that L.M. was reluctant to testify against appellant. Following a hearing on the motion, the trial court granted the state's request.
 {¶ 5} The guardian ad litem asserted in his motion that, pursuant to Evid.R. 601(A), L.M. was incompetent to testify as a witness in this case. After a hearing on this matter, during which the trial court heard testimony from L.M. and her neurologist, the trial court determined that L.M. was, in fact, competent to testify.
 {¶ 6} The trial court ordered that L.M.'s testimony be taken by way of videotaped deposition, in accordance with R.C. 2945.482, and denied appellant's motion to declare R.C. 2945.482 unconstitutional.
 {¶ 7} L.M.'s videotaped deposition was taken on July 18, 2005, and the case proceeded to trial on July 25, 2005.
 {¶ 8} At trial, evidence of the following was adduced. On the morning of October 3, 2003, 17-year old L.M., who suffers from mental retardation and cerebral palsy, told her teacher, Pat Keller, that her stepfather, Ron, had taken his penis and put it "down there" and in her mouth. She repeated these allegations during an October 7, 2003 interview with Job and Family Services investigator Betsy Gordon. *Page 3 
 {¶ 9} Weeks later, on November 14, 2003, L.M. recanted. She told Keller that she had lied about Ron and that nothing had happened. That same day, she told Gordon that nothing had happened and that her allegations were untrue. Finally, at trial, she testified, through her deposition taken on July 18, 2005, that "nothing really happened."
 {¶ 10} The case went to the jury in the afternoon of July 26, 2005. On July 27, 2005, the jury advised the trial court that it could not reach a verdict on either charge. The trial court — over defense counsel's objection — issued an instruction pursuant to State v. Howard (1989),42 Ohio St.3d 18. Soon after, the jury returned a verdict finding appellant not guilty of the rape charge and guilty of the sexual battery charge.
 {¶ 11} On October 13, 2005, appellant was sentenced to serve three years in prison for the sexual battery offense. Appellant timely filed his notice of appeal, raising the following assignments of error:
 {¶ 12} I. "THE TRIAL COURT ERRED IN DENYING APPELLANT HIS RIGHT TO FACE TO FACE CONFRONTATION OF HIS ACCUSER GUARANTEED HIM UNDER ARTICLEI, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 13} II. "THE TRIAL COURT ERRED IN CALLING THE COMPLAINING WITNESS AS A WITNESS CALLED BY THE COURT."
 {¶ 14} III. "THE TRIAL COURT ERRED IN FINDING THE COMPLAINING WITNESS COMPETENT TO TESTIFY."
 {¶ 15} IV. "THE TRIAL COURT ERRED IN FAILING TO FIND R.C. 2945.482
UNCONSTITUTIONAL." *Page 4 
 {¶ 16} V. "THE TRIAL COURT ERRED IN EXCLUDING PRIOR FALSE ALLEGATIONS BY THE COMPLAINING WITNESS."
 {¶ 17} VI. "THE TRIAL COURT ERRED IN GIVING THE JURY A DYNAMITE CHARGE AFTER THE JURY ADVISED THE TRIAL COURT THAT IT COULD NOT REACH A VERDICT."
 {¶ 18} We begin by considering appellant's first and fourth assignments of error, both of which involve claims that the use of L.M.'s videotaped testimony, in accordance with R.C. 2945.482, deprived appellant of his constitutional right of confrontation.
 {¶ 19} R.C. 2945.482 permits the testimony of a mentally retarded or developmentally disabled victim to be taken as a videotaped deposition. The deposition may later be played at trial, without the witness having to testify in person at the trial, but only if: 1) the defendant had an opportunity and similar motive at the time of the taking of the deposition to develop the testimony by direct, cross, or redirect examination; and 2) the trial court has determined that there is reasonable cause to believe that if the witness were to testify in person at the proceeding, that witness would experience serious emotional trauma as a result of his or her participation at the proceeding. R.C. 2945.482 (C)(1) (setting forth requirements for admissibility of videotaped deposition); R.C. 2945.482 (B)(2) (providing that if a videotaped deposition is admitted as evidence in a proceeding, the mentally retarded or developmentally disabled victim shall not be required to testify in person in that proceeding).
 {¶ 20} The statute requires that the defendant be permitted to observe and hear the testimony of the witness on a monitor, and be provided with an electronic means of *Page 5 
immediate communication with the defendant's attorney during the testimony. R.C. 2945.482(B)(2). The statute further requires that the defendant be restricted to a location from which the defendant cannot be seen or heard by the witness, except on a monitor provided for that purpose. Id. Finally, the statute provides that the witness is to be provided with a monitor on which he or she can observe the defendant during the testimony.
 {¶ 21} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." Section 10, Article I of the Ohio Constitution similarly provides that "the party accused shall be allowed * * * to meet the witness face to face * * *; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. * * *"
 {¶ 22} The purpose of each of the Confrontation Clauses is to secure a defendant's opportunity for cross-examination. State v. Self(1990), 56 Ohio St.3d 73, 76. Although a defendant generally has a right to a physical face-to-face confrontation at trial, if necessary to further an important public policy, and if the reliability of the testimony is otherwise assured, that physical confrontation may properly be denied. Id., at 77.
 {¶ 23} To determine whether R.C. 2945.482 is in violation of the federal Confrontation Clause, we look to the United States Supreme Court's analysis in Maryland *Page 6 v. Craig (1990), 497 U.S. 836. In that case, the court upheld a Maryland statute which provided for the presentation of testimony via closed-circuit television in cases involving a child witness alleged to be the victim of child abuse. Under that statute, the closed-circuit television procedure could be used in cases where there had been a judicial determination that testimony by the child victim in the courtroom would result in the child suffering "serious emotional distress such that the child [could not] reasonably communicate".
 {¶ 24} In upholding the Maryland statute, the court concluded that "where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant * * * the [federal] Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of the confrontation." Id., at 857.
 {¶ 25} With regard to the particular case before it, the court found the evidence to be sufficiently reliable where the child witnesses testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified. Id. at 857.
 {¶ 26} To evaluate the sufficiency of a trial court's finding of necessity, the court established the following three-part test: First, the finding of necessity must be case-specific; that is, in each case, the trial court must hear evidence and determine whether use of the statutory procedure is necessary to protect the welfare of the particular child *Page 7 
witness who seeks to testify. Id., at 855. Second, the trial court must find that the child witness would be traumatized, "not by the courtroom generally, but by the presence of the defendant." Id., at 856. And third, "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more thande minimis, i.e., more than `mere nervousness or excitement or some reluctance to testify.'" Id.
 {¶ 27} Citing Maryland v. Craig, supra, appellant argues that R.C.2945.482 is constitutionally infirm because it requires a determination that emotional trauma would result from the witness's participation atthe proceeding, rather than from the witness being in the presence of the defendant. The futility of this argument becomes apparent upon a close reading of the very case upon which appellant relies.
 {¶ 28} As indicated above, the statute in Maryland v. Craig involved a procedure for use in cases where courtroom testimony by the child victim would result in the child suffering "serious emotional distress suchthat the child [could not] reasonably communicate." Maryland v.Craig, 497 U.S. 837, 840-841. As with the Ohio statute, the language of the Maryland statute did not particularly state that the kind of emotional distress to be protected against was that which would result from the child being in the presence of the defendant. Still, the Maryland statute was upheld as constitutional.
 {¶ 29} Although appellant was denied a physical confrontation, pursuant to R.C. 2945.482, he was still provided a full opportunity, through his counsel, to cross-examine L.M. Not only was he able to communicate with his attorney during the testimony, he *Page 8 
was able to observe L.M. on the video monitor. In addition, L.M. was able to view him on a video monitor.
 {¶ 30} Because we discern no material difference between R.C. 2945.482
and the statute approved in Maryland v. Craig, we conclude that the use of a mentally retarded or developmentally disabled victim's videotaped deposition at trial in place of live testimony, in accordance with R.C.2945.482, does not violate a defendant's right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution. Cf., State v. Self (1990), 56 Ohio St.3d 73, 78 (upholding a statute similarly permitting the use of a child sexual abuse victim's videotaped deposition).
 {¶ 31} Next, we must determine whether the R.C. 2945.482 procedure violates the right of confrontation as guaranteed by Section 10, ArticleI of the Ohio Constitution. The Supreme Court of Ohio in State v.Self supra, determined that "Section 10, Article I provides no greater right of confrontation than the Sixth Amendment." 56 Ohio St.3d at 79. On that basis, we conclude that because the use of a mentally retarded or developmentally disabled victim's videotaped deposition at trial in place of live testimony, in accordance with R.C. 2945.482, does not violate a defendant's right of confrontation as guaranteed by theSixth Amendment to the United States Constitution, it likewise does not violate Section 10, Article I of the Ohio Constitution. Cf., State v.Self supra; State v. Storch (1993), 66 Ohio St.3d 280, 293 (holding that where evidence clearly shows that a child may suffer significant emotional harm by being forced to testify in the actual presence of a person he or she is accusing of abuse, the child may be *Page 9 
considered unavailable for purposes of the Rules of Evidence, and the out-of-court statements can admitted without doing violence to Section 10, Article I).
 {¶ 32} To the extent that appellant challenges the trial court's findings of necessity in this case, we note that the record before us does not include a transcript of the June 30, 2005 hearing wherein the trial court apparently stated its findings in support of its order directing that L.M.'s testimony be taken pursuant to R.C. 2945.482. The law is well-established that it is appellant's burden to include all relevant evidence in the appellate record so that any claimed errors can be demonstrated to the reviewing court; absent a complete record, we must presume regularity in the trial court's proceedings and accept the validity of its judgment. State v. Walker (Nov. 4, 1999), 8th Dist. No. 74773. Because appellant failed to include a transcript of the June 30, 2005 hearing, we must presume that the proceedings of that hearing, and the resultant judgment, were correct.
 {¶ 33} For all of the foregoing reasons, appellant's first and fourth assignments of error are found not well-taken.
 {¶ 34} Next we consider appellant's second assignment of error, wherein he asserts that the trial court erred in calling L.M. as its own witness.
 {¶ 35} Evid.R. 614(A) provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The decision of whether to call individuals as witnesses of the court is left to the sound discretion of the trial court. State v. Adams (1980),62 Ohio St.2d 151, paragraph four of the syllabus. The term "abuse of discretion" suggests more *Page 10 
than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Apanovich
(1987), 33 Ohio St.3d 19, 22.
 {¶ 36} We find nothing unreasonable, arbitrary, or unconscionable about the trial court's decision to call L.M. as a court's witness. L.M. initially reported allegations of abuse to both her teacher and investigator Gordon. Shortly after, she denied those allegations. The trial court was justified in calling her as the court's witness in order to provide the prosecution an opportunity to cross-examine her about her prior inconsistent statements.
 {¶ 37} According to appellant, the court's ruling impermissibly circumvents Evid.R. 607, which requires a showing of surprise and affirmative damage before a party may cross-examine its own witness by means of a prior inconsistent statement. Courts have repeatedly rejected this argument, finding that when a witness is called pursuant to Evid.R. 614(A), Evid.R. 607(A) has no application. State v. Schultz, 11th Dist. No. 2003-L-156, 2005-Ohio-345, ¶ 32.
 {¶ 38} Appellant's second assignment of error is found not well-taken.
 {¶ 39} Appellant argues in his third assignment of error that the trial court erred in finding L.M. competent to testify. We note at the outset that a trial court's competency determinations will not be disturbed on appeal absent an abuse of discretion. State v. Clark
(1994), 71 Ohio St.3d 466, 469.
 {¶ 40} Evid.R. 601 relevantly provides that "[e]very person is competent to be a witness except * * * those of unsound mind, and children under ten years of age, who *Page 11 
incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A); see also R.C. 2317.01. The term "unsound mind", as defined at R.C. 1.02(C), includes all forms of mental retardation. Being of unsound mind, however, does not automatically render a witness incompetent to testify. State v. Bradley (1989), 42 Ohio St.3d 136, 140; see also,State v. Sanders, 8th Dist. No. 86405, 2006-Ohio-809, ¶ 12. "`[A] person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'" Bradley, supra, at 140-141, quoting State v. Wildman (1945), 145 Ohio St. 379, paragraph three of the syllabus.
 {¶ 41} In this case, the first part of the competency hearing was held on April 7, 2005. At that time, the court heard testimony by L.M.'s neurologist, Brendan W. Bauer, M.D. When asked by the trial court: "Do you think she is capable of perceiving a set of facts or understands what has happened to her, specifically, in this case, that she was raped? And more importantly, could she reasonably relate those facts accurately in a courtroom setting?", Dr. Bauer responded, "I don't think she could reasonably without, if she was coached, you could get her to say anything that you would want her to say. If she wasn't, if you were to ask her directly, I don't think you would get an answer, or if you did, you could ask her another day and get a different set of answers."
 {¶ 42} When defense counsel asked Dr. Bauer, "Doctor, am I correct in understanding that this young lady does not have the ability to receive accurate *Page 12 
impressions of fact?", Dr. Bauer replied, "Simple facts, like I said, simple things, `Are you hungry?' Yes or no questions. But I think if you were to present something to her, even if it may have happened to her and been complex or traumatic, I don't know if she would be able to recall or describe that back to you."
 {¶ 43} When defense counsel asked Dr. Bauer, "So she won't be able to accurately recollect impressions of things that happened other than the basic necessities of life?", Dr. Bauer responded, "I think that would be accurate."
 {¶ 44} When defense counsel asked Dr. Bauer, "Is it fair to say that she also would not be able to relate those impressions truthfully?", Dr. Bauer responded, "I guess the only thing I could probably think of is that if something immediately happened to her, I think that could probably be recalled. Now if you were to ask her about something traumatic, if she were to fall down and hurt herself, she could say, `I fell and this is what happened.' If you test her a week later about things that had happened, or ask her about something, very traditional matters, I don't know if she would have that capacity to relay that so far removed."
 {¶ 45} Finally, when defense counsel asked Dr. Bauer, "Sounds like she would not be able to understand the nature of an oath?", Dr. Bauer responded, "I don't think so."
 {¶ 46} After hearing this testimony, the trial court continued the competency hearing until April 21, 2005, so that it could conduct an interview with L.M., herself. During the April 21, 2005 portion of the hearing, the trial court questioned L.M. regarding her age, birthplace, living arrangements, education, schedule and routines. The *Page 13 
trial court also questioned her about recent events and activities, the role of the judge, and the meaning of the truth and a lie. Following this interview, the trial court found as follows:
 {¶ 47} "Well, if she doesn't hold up at trial, so be it, but I think based on her performance, her testimony here today, I can't keep her off the witness stand.
 {¶ 48} "I realize that we have a gross disparity between what the doctor says and what she did here today, but I just don't see any basis for keeping her off the stand, and I think we need a trial date."
 {¶ 49} Following an objection from defense counsel concerning her ability to distinguish the truth from a lie, the trial court went on to state:
 {¶ 50} "[L.M.] was focused on the question. I saw her. She actually, when it took a little thought to answer, she repeated the question to herself. I just don't see any basis for keeping her off the stand.
 {¶ 51} "And I make that decision realizing that there is a gross disparity between the doctor's evaluation of her and her performance here today. I don't see any basis for doing it."
 {¶ 52} The trial court ruled that L.M. was competent to testify, and we agree with that ruling. A review of her testimony indicates that she was able to perceive, recall, and relate facts truthfully. Although there were clear inconsistencies between L.M.'s initial statements and her eventual recantation, such inconsistencies go to her credibility, and not to her competency. See, e.g., State v. Rayburn (Apr. 24, 2000), 12th Dist. No. CA99-03-005. Appellant's third assignment of error is found not well-taken. *Page 14 
 {¶ 53} Appellant argues in his fifth assignment of error that the trial court erred in excluding evidence of prior allegations of sexual conduct by L.M. In particular, appellant complains that the trial court should have allowed him to question L.M.'s mother about the truthfulness of past accusations by L.M.
 {¶ 54} We begin by noting that "false accusations, where no sexual activity is involved, do not fall within the rape shield statute."State v. Boggs (1992), 63 Ohio St.3d 418, 421. Therefore, under such circumstances, the trial court, in its discretion, may permit a defendant to cross-examine a victim regarding such accusations if clearly probative of truthfulness or untruthfulness. Boggs, supra; Evid.R. 608(B). But, under no circumstances would the defendant be permitted to prove the matter with extrinsic evidence. Boggs, supra, at 422; Evid.R. 608(B).
 {¶ 55} Here, appellant's challenge is not that he was unable to cross-examine the victim, but rather that he was unable to cross-examine the victim's mother concerning the victim's prior allegations. Such evidence is neither proper nor admissible under the law. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 56} Appellant argues in his sixth assignment of error that the trial court erred in giving a supplemental charge to the jury pursuant to State v. Howard (1989), 42 Ohio St.3d 18. In Howard, supra, the Supreme Court of Ohio rejected the traditional Allen charge — as is set forth in Allen v. United States (1896), 164 U.S. 472, 501 — finding that, due to its potentially coercive impact, it "is not a proper supplemental charge to be given to juries in Ohio which have become deadlocked on the question of conviction or acquittal". Howard, supra, at paragraph one of the syllabus. *Page 15 
 {¶ 57} In formulating a proper instruction to be given in place of theAllen charge, the court was mindful of the following considerations: 1) a supplemental instruction must not be coercive by stressing that the jury must reach a verdict — which would be a clear misstatement of the law; 2) the instruction must allow the trial judge to remind the jury of the reason a jury is assembled, namely, to reach a unanimous decision if each juror can conscientiously agree to a verdict; and 3) the instruction must be balanced and neutral.
 {¶ 58} Ultimately, the court approved the following supplemental instruction:
 {¶ 59} "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been *Page 16 
reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors." Id., at paragraph two of the syllabus.
 {¶ 60} In the instant case, the trial court, after being informed by the jury that they were unable to come to a unanimous verdict, stated to the jury:
 {¶ 61} "All right. I would like you to continue working for awhile since you all planned to be here today anyways, and see if you can resolve your differences."
 {¶ 62} The trial court then proceeded to give the very instruction that was approved in Howard.
 {¶ 63} We find that the court's instruction, which was in conformity with the one specifically crafted and approved by the Supreme Court of Ohio in Howard, was not coercive and was entirely proper. Appellant's sixth assignment of error is therefore found not well-taken.
 {¶ 64} For all of the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant's motion requesting an order to stay the conditions of his probation pending appeal is hereby dismissed as moot. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's *Page 17 
expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1