OPINION
{¶ 1} Plaintiff-appellant Travis Huffman appeals from a decision of the Darke County Court of Common Pleas, Juvenile Division, awarding custody of the minor child, K.H., to defendant-appellee Robert Wolford, after paternity testing conclusively proved that Wolford, not Huffman, was the biological father of the child. The trial court rendered its decision regarding the custody of K.H. after a review hearing held on September 22, 2005. The trial court filed its judgment entry on October 12, 2005. Huffman filed a notice of appeal with this Court on November 14, 2005.
 I {¶ 2} The instant matter was originally before the trial court on Huffman's complaint to establish custody of K.H. filed on February 21, 2003. On the same date, Huffman was granted interim custody of K.H. pending the outcome of paternity testing to determine if he was the father of the minor child. A paternity test revealed that Huffman is not the biological father of K.H. The trial court then ordered K.H.'s biological mother, Jessica Sue Forsythe, to disclose the name and location of K.H.'s biological father so that he could be apprised of his rights and responsibilities with respect to the minor child. Forsythe indicated that the biological father of K.H. is Wolford.
 {¶ 3} After paternity testing was completed and Wolford was determined to be the biological father of K.H., the trial court ordered that Huffman retain temporary custody of the minor child but granted Wolford visitation in an entry filed on April 15, 2005. Wolford's visitation with K.H. was slowly increased over the following months until the minor child was spending the majority of his time with Wolford. On September 22, 2005, the trial court granted temporary custody of K.H. to Wolford and terminated Huffman's visitation with the child. The trial court also issued a no contact order between Huffman and his parents and Wolford.
 {¶ 4} It is from this judgment which Huffman now appeals.
 II {¶ 5} Huffman's first assignment of error is as follows:
 {¶ 6} "THE TRIAL COURT ERRED WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM TO REPRESENT THE BEST INTEREST OF THE MINOR CHILD IN RELATION TO CUSTODY AND VISITATION."
 {¶ 7} Essentially, Huffman argues that the trial court abused its discretion when it terminated Huffman's custody and visitation rights with K.H. in favor of granting permanent custody of the minor child to Wolford, the child's biological father. We disagree.
 {¶ 8} It is well established that natural parents have a fundamental liberty interest in the care, custody, and management of their children. In re Hockstok (2002), 98 Ohio St.3d 238,781 N.E.2d 971, 2002-Ohio-7208. Nevertheless, where a child has been adjudicated dependent, R.C. § 2151.353(A)(3) provides that a trial court, in its sound discretion, may award legal custody of that child to a person other than that child's parents. In reGuedel S. (June 16, 2000), Lucas App. No. L-99-1343. Matters within the court's discretion will not be reversed absent an abuse of that discretion. An abuse of discretion is more than an error of law or judgment; the term connotes that the court's attitude was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 9} When determining custody between a parent and a non-parent in an original custody dispute, the Supreme Court of Ohio has declared that custody may not be awarded to the non-parent without a finding of parental unsuitability. In rePerales (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus. To demonstrate unsuitability, it must be shown by a preponderance of the evidence "that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id.
 {¶ 10} In his first assignment, Huffman contends that the trial court erred when it declined to appoint a guardian ad litem ("GAL") to represent the best interests of K.H. during the pendency of the custody dispute. Huffman argues that pursuant to R.C. § 3109.04, when the custody and visitation of a minor child are at issue and a party to the case requests it, the statute mandates the appointment of a GAL. R.C. 3109.04(2)(a) states in pertinent part:
 {¶ 11} "(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:
 {¶ 12} "(a) The court, in its discretion, may and, upon themotion of either parent, shall appoint a guardian ad litem forthe child."
 {¶ 13} It is clear from the statute that if one of the child's parents files a motion requesting the appointment of a GAL, then the trial court must grant the motion. In the instant case, however, Huffman is not K.H.'s biological father. Thus, he does not have standing pursuant to R.C. § 3109.04 to demand that a GAL be appointed to represent the interests of K.H. Moreover, Huffman's assertion that he need only be a party to the case to demand the appointment of a GAL is a mischaracterization of the statute. The language used in R.C. § 3109.04 only mandates the appointment of a GAL if the person requesting it is a parent of the minor child involved.
 {¶ 14} We also note that the trial court appointed a CASA/GAL earlier in the case who found that Wolford was a suitable parent for K.H. and recommended that the ultimate goal of the custody proceedings should be their unification. At the hearing, the trial court found that Huffman's request for the appointment of a GAL was made for the purpose of delaying the proceedings. Thus, we find that the trial court did not abuse its discretion when it denied Huffman's request that a second GAL be appointed to review the case.
 {¶ 15} Huffman's first assignment of error is overruled.
 III {¶ 16} Because assignments of error 2 and 3 are interrelated, they will be discussed together:
 {¶ 17} "THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW APPELLANT TO PRESENT EVIDENCE IN REGARD TO CUSTODY AND VISITATION RIGHTS TO THE MINOR CHILD.
 {¶ 18} "THE TRIAL COURT ERRED BY DENYING COMPANIONSHIP RIGHTS BETWEEN APPELLANT AND THE MINOR CHILD."
 {¶ 19} In Huffman's second assignment, he contends that the trial court erred when it denied his request to present testimony at the hearing with respect to his alleged right to visitation and/or custody of K.H. At the review hearing, the trial court made the following finding regarding Huffman's request that he be allowed to present the testimony of Marlene Harris, a Headstart program teacher who observed a good deal of positive interaction between K.H. and his half-brother, A.H.:
 {¶ 20} "Trial Court: I really don't need any testimony from the Headstart lady. I'm going to assume that the brothers have a great relationship, and I'm going to assume that she will say that they get along fine. Here's what she sees at school and whatever.
 {¶ 21} "It's — it's certainly not something that has not crossed my mind that what should you do as to the half brother scenario. But I painted the picture when we started this thing a long time ago that if the [biological] father were located, people needed to be ready to make this move."
 {¶ 22} Although Huffman's counsel objected to the trial court's decision not to allow her to introduce witness testimony regarding K.H. and A.H.'s relationship, she did not disagree with the court's analysis of the proposed testimony she wished to present. It is clear from the record in this matter that the trial court did not abuse its discretion when it denied Huffman's request that he be allowed to present testimony on the half-brothers' relationship.
 {¶ 23} In his third assignment, Huffman contends that the trial court abused its discretion when it denied him visitation or companionship rights with K.H. Huffman argues that pursuant to R.C. § 3109.051(B) and (D), the trial court has the discretion to grant visitation or companionship rights to a non-parent if the interested person files a motion requesting such relief, the movant has an interest in the welfare of the child, and that a grant of visitation or companionship rights is in the best interests of the minor child.
 {¶ 24} In support of his assertion, Huffman points out that he has a strong interest in the welfare of K.H. insofar as he has provided financial and emotional support for the child for the first three years of his life. Additionally, Huffman argues that terminating the child's interaction with his half-brother, A.H., as well as the rest of the Huffman family will be detrimental to K.H. and not be in the child's best interests.
 {¶ 25} With respect to the its reasoning in denying visitation or companionship rights to Huffman, the trial court stated in pertinent part:
 {¶ 26} "As to visitation, I could just say what I needed to say here, but I'm going to address it in a little more detail. All along, the court has been alluding to, as opposed to what would be a phase in visitation schedule, a phase out visitation schedule. And for reason, it's not necessarily attempted, although there was like — like had to be an equal kind of thing.
 {¶ 27} "I am of the opinion that, Mr. Wolford, you need to seriously think about allowing this — your child to visit his half-brother. And I do realize that while you are in control of that (inaudible). So at the present time as to visitation, I'm going to order visitation as the parties may agree. And I will say clearly to Ms. Monnin [Huffman's counsel], if you can't agree by November or so, a motion can be filed and we can have a hearing on the issue of companionship rights.
 {¶ 28} "Mr. Wolford, I know emotions are running high, and you at this point feel like you have been violated. That's your opinion as to what goes on. Mr. Huffman's had a different opinion than that.
 {¶ 29} "I strongly urge you to sit down with your attorney and come up with a proposed visitation schedule as soon as possible of some nature to allow your son to see his half-brother and the Huffman family essentially.
 {¶ 30} "I — it's my opinion today, * * * I'm not going to force a visitation schedule on someone with the emotions as high as they are and I agree. There needs to be a cooling off period by which all parties take a step back and say, `Hey, where are we at? What is in [K.H.]'s best interest?'"
 {¶ 31} After a thorough review of the record in this matter, we find that the trial court did not abuse its discretion when it denied immediate visitation rights to Huffman. Based on its comments at the review hearing, the trial court made a thoughtful attempt to strike a balance between the best interests of the child and the fundamental rights of Wolford in decisions involving the parenting of his son, K.H. The trial court recognized the need for the parties involved to be given the opportunity to amicably resolve issues surrounding K.H.'s continued interaction with his half-brother, A.H. In the event the parties were unable to create a reasonable visitation schedule, the trial court stated its inclination to order such visitation at a future date.
 {¶ 32} Huffman's second and third assignments of error are overruled.
 IV {¶ 33} Huffman's fourth and final assignment of error is as follows:
 {¶ 34} "THE TRIAL COURT ERRED WHEN IT ISSUED A NO CONTACT ORDER BETWEEN APPELLEE AND APPELLANT AND KEITH AND PAULA HUFFMAN."
 {¶ 35} Initially, it should be noted that Huffman did not object to the trial court's imposition of the no contact order between Huffman and Wolford. Failure to timely object waives the opportunity for appellate review of any issue not preserved and, accordingly, such issue need not be considered for the first time on appeal. State v. Self (1990), 56 Ohio St.3d 73, 81,564 N.E.2d 446, State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277. Upon a thorough review of the record, we find that Huffman did not properly preserve the portion of the assignment of error pertaining to himself for review by failing to raise the issue before the trial court. In any event, based on the volatile history between the parties, the trial court was well within its power in ordering that there be no contact between Huffman and Wolford, except through their counsel.
 {¶ 36} However, Huffman did object to the issuance of the no contact order between Wolford and Keith and Paula Huffman (Huffman's parents), who were not parties to the instant case. Since Huffman's parents were not parties to this litigation, the court exceeded its authority in issuing an order against them. As the custodial and biological parent, Wolford may decide whether or not the child has any contact with the couple his son knew as grandparents.
 {¶ 37} Huffman's final assignment of error is overruled in part and sustained in part.
 V {¶ 38} Based upon the foregoing, the judgement of the trial court is affirmed with respect to its grant of permanent custody of K.H. to Wolford, the biological father of the minor child, and its denial of visitation rights to Huffman. The judgment of the trial court is reversed regarding its issuance of a no contact order between Wolford and Keith and Paula Huffman, who were not parties to the instant case, and this cause is remanded for proceedings consistent with this opinion.
Wolff, J. and Milligan, J., concur.
(Hon. John R. Milligan retired from the Fifth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).