[Cite as *Hercutt v. Hercutt*, 2012-Ohio-206.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

SUE E. HERCUTT                                    :

    Plaintiff-Appellee                       :          C.A. CASE NO.    24778

v.                                                :          T.C. NO.    09DR599

TERRY L. HERCUTT                                  :          (Civil appeal from Common
                                                             Pleas Court, Domestic Relations)

    Defendant-Appellant                      :

                                                  :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the    20th    day of    January   , 2012.

· · · · · · · · · ·

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 42 Woodcroft Trail, Suite D, Beavercreek, Ohio 45430
    Attorney for Plaintiff-Appellee

TERRY L. HERCUTT, 4650 Carlton Road, West Alexandria, Ohio 45381
    Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1} Terry Hercutt appeals, pro se, from a Final Judgment and Decree of Divorce of the Montgomery County Court of Common Pleas, Domestic Relations Division, which

divided marital assets and awarded spousal support to Sue Elaine Hercutt.

{¶ 2} The Hercutts were married for over forty-one years. Mrs. Hercutt filed a complaint for divorce in June 2009, and Mr. Hercutt filed a counterclaim. Mr. Hercutt also joined his son, Martin Hercutt, as a third party defendant, because Martin held title to a car that was alleged to be marital property. The parties reached an agreement with respect to many of their assets, and hearings were held on the disputed issues in September and October 2010. Mrs. Hercutt and Martin were represented by counsel at the hearings; Mr. Hercutt represented himself. On July 25, 2011, the trial court filed its Final Judgment and Decree of Divorce. In addition to dividing the property upon which the parties had failed to agree, the decree ordered Mr. Hercutt to pay spousal support to Mrs. Hercutt in the amount of $500 per month.

{¶ 3} Mr. Hercutt raises several assignments of error on appeal, although they are not clearly identified.

{¶ 4} First, Mr. Hercutt contends that the disposition of two vehicles – a 1969 Ford truck and a Yamaha motorcycle – was omitted from the decree. The parties reached an agreement with respect to the distribution of their vehicles. This agreement, as it was read into the record, was that Mrs. Hercutt would receive a beige 2000 Nissan Maxima and a camper, and that Mr. Hercutt would receive the 1969 Ford truck, the 1988 Ponderosa, the 1989 black Nissan pickup truck, the 1968 Ducati, the dune buggy, the Kittyscat motorcycle, the 1995 Nissan, the 1993 Nissan Pathfinder, and the 1972 Nissan pickup truck. The parties further agreed that the 1979 Yamaha motorcycle would be sold and the proceeds divided equally. The decree did not contain any reference to the 1969 Ford pickup and  the 1979

Yamaha. It appears that this omission was simply an oversight; there was an interruption of the proceedings while the vehicles were being listed, and there is no dispute that the parties agreed on these matters. Mrs. Hercutt acknowledges the "clerical error" in her brief and states that the proceeds from the sale of the Yamaha and the title to the Ford truck are available for Mr. Hercutt to pick up at her attorney's office, but he has failed to do so. We will remand for the trial court to correct this omission from its final decree of divorce.

{¶ 5} Second, Mr. Hercutt seems to contend that he should have been given the opportunity to purchase the Yamaha motorcycle before it was sold to someone else. The record does not suggest that the parties had agreed to allow Mr. Hercutt the right to purchase the vehicle or that he had expressed any desire to do so. In fact, considering that some other imbalances in the distribution of assets had been offset, it seems that the parties might have handled the motorcycle in the same way if Mr. Hercutt had a strong desire to keep it (i.e., half of its value could have been offset against assets awarded to Mrs. Hercutt). In any event, there is no basis for us to conclude that the trial court erred in failing to give Mr. Hercutt the first opportunity to purchase the Yahama motorcycle.

{¶ 6} Third, Mr. Hercutt contends that the trial court erred in referring – in the transcript – to Sean Hercutt. "Sean Hercutt" was identified as the third-party defendant at the September 21, 2010, hearing *by his own attorney*. Immediately thereafter, the trial court repeated this reference. However, at the hearing on October 27, 2010, the third-party defendant was identified as "Martin Hercutt", both when he testified and in the testimony of his father. "Martin" is apparently the son of Mr. Hercutt from a previous relationship, and he and his father claimed at the hearing that some of the items stored at the marital residence

belonged to him (Martin) and were not marital property.

{¶ 7} It appears from the record that "Sean" and "Martin" are, in fact, the same person.   The source of the confusion over the name is unclear.   However, it is not apparent that   the final decree's statement that Mr. Hercutt must hold Mrs. Hercutt "harmless to any and all claims to property granted to [Mr. Hercutt] in this decree, including but not limited to claims by third-party defendant Martin Hercutt" was erroneous.

{¶ 8} Fourth, Mr. Hercutt contends that the trial court abused its discretion in concluding that some disputed property – a "metal break," welding equipment, and an air compressor – were marital property.    The trial court awarded these items to Mr. Hercutt, but it attached a total value to these items of $8,000 and ordered Mr. Hercutt to pay Mrs. Hercutt $4,000 for her share.

{¶ 9} Mrs. Hercutt testified that she understood the metal break, welding equipment, and air compressor to be marital property that Mr. Hercutt had purchased and that had been stored on their property for many years.   She also presented evidence that these pieces of equipment had been insured on their homeowners' insurance policy; the values that the court assigned to the assets were the amounts for which they were insured on the policy.   On the other hand, Mr. Hercutt testified that the metal break belonged to his brother and that the welding equipment belonged to AG Samuelson;[1] he did not testify specifically about the ownership of the air compressor.   He testified that these pieces of equipment had merely been borrowed by him for various jobs and were not marital property.   Martin Hercutt also testified on Mr. Hercutt's behalf, stating that the air compressor belonged to him, that the

---

[1]A.G. Samuelsson (the correct spelling) is a general contractor in Springfield, Ohio.

welding equipment belonged to AG Samuelson, and that Mr. Hercutt had owned the metal break before he married Mrs. Hercutt.

{¶ 10} In a decision filed before the final judgment, the court found that the disputed items were marital property. It reasoned: "These items were on their property and used by them for years and were declared by Sue and Terry Hercutt on their 'Inventory of Chattel Property' to Wayne Mutual Insurance Company prior to the filing of this divorce action." Because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony," we defer to the trial court's findings of fact. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶24; *Oswalt v. Ingram*, Darke App. No. 2010 CA 8, 2010-Ohio-5754, ¶15. In our view, the trial court did not abuse its discretion in crediting the testimony of Mrs. Hercutt on this issue or in determining that the pieces of equipment were marital property.

{¶ 11} Fifth, Mr. Hercutt contends that any reference to the "Kabota tractors" in the divorce decree should be stricken because Bill Rubush's testimony about the tractors was stricken.

{¶ 12} At the hearing, the parties agreed that two Kabota tractors on their property had been purchased by Mr. Rubush and would be returned to him. After this portion of the agreement was read into the record, Rubush testified very briefly, and then Mr. Hercutt moved to strike the testimony because it was no longer relevant. The trial court granted this request and struck the testimony. The final judgment simply stated that, "based on the agreement of parties, the two Kabota tractors are the property of Bill Rubush and the same

are hereby ordered returned to Bill Rubush." Insofar as this language accurately reflects the parties' agreement, it was properly included in the decree, and Mr. Hercutt has suffered no prejudice by it.

{¶ 13} Sixth, Mr. Hercutt claims that Mrs. Hercutt should not have received spousal support because she gave "false statements" at the hearing about her work history and specialized training. Specifically, he claims that Mrs. Hercutt had a recent work history and had specialized training as a bus driver, which undercut her claimed need for support.

{¶ 14} Mrs. Hercutt testified that she had income of $501 per month from her Social Security and $206 per month from her husband's Social Security; she also works one month per year for "a nursery that has a maze," for which she earns a total of approximately $700. According to Mrs. Hercutt, her annual income was $8,500 - $9,000; she was 64 years old at the time of the hearing. She further testified that Mr. Hercutt received $1,684 per month from Social Security and $1,817 per month from his pension (totaling $42,012 per year), and she relied on Mr. Hercutt's Affidavit of Financial Disclosure, on which he reported an annual income of $52,192.

{¶ 15} Mrs. Hercutt did acknowledge, in her own testimony and on cross-examination by Mr. Hercutt, that she had worked twenty years earlier, but had been laid off and never returned to work. She acknowledged that her prior work experience included driving a bus, but she stated that she was no longer qualified to drive a bus and would be unable to do so due to recent problems with and surgery on her hand. Mr. Hercutt did not expressly refute these claims, although he did comment on Mrs. Hercutt's failure to present a "doctor's decision" related to the effect of her hand injury on her ability to drive a

bus. Mr. Hercutt also did not refute Mrs. Hercutt's testimony about either party's actual income at the time of the hearing. By the time of the trial court's decision in May 2011, the parties had also presented documentation of their income from Mr. Hercutt's pension.

{¶ 16} Based on the parties' testimony and the information related to Mr. Hercutt's pension, the trial court concluded that Mrs. Hercutt's annual income from all sources (including Mr. Hercutt's pension) was $26,224 and that Mr. Hercutt's income from all sources was $42,012. These numbers are supported by the record. Based on these numbers, the trial court's May 2011 decision stated that an award of spousal support was reasonable and appropriate, and it awarded $500 per month to Mrs. Hercutt, subject to the continuing jurisdiction of the court.

{¶ 17} Mr. Hercutt objects to the fact that Mrs. Hercutt was awarded spousal support. The parties presented conflicting testimony as to whether Mrs. Hercutt had specialized skills or was physically able to return to work, and no other evidence was offered on this issue. The credibility of the testimony was for the trial court to determine. *Wilson,* 113 Ohio St.3d 382, ¶24; *Oswalt*, supra, ¶15. Considering the parties' relative earning abilities, the discrepancies in their incomes, and Mrs. Hercutt's lack of recent work experience, we cannot conclude that the trial court abused its discretion when it awarded spousal support to Mrs. Hercutt in the amount of $500 per month.

{¶ 18} Mr. Hercutt also objects to the language of the final judgment with respect to retaining jurisdiction over spousal support. The final judgment was drafted by Mrs. Hercutt's attorney and contains inconsistent provisions with respect to the court's continuing jurisdiction. Although the court's May 2011 decision stated that the court would retain

jurisdiction over the amount and term of spousal support, the final judgment states that "[t]he issue of spousal support shall be subject to the continuing jurisdiction of the Court as to the amount only, not duration." A subsequent paragraph in the same section states, however, that the court "retains jurisdiction over the issue of spousal support and may modify the amount and/or term of this spousal support upon the change of circumstances of a party."

{¶ 19} The provisions in question are obviously inconsistent and cannot be reconciled. The record contains no support for the statement that the trial court intended to retain jurisdiction over the amount, but not the duration, of the spousal support.

{¶ 20} Moreover, we have held that it is an abuse of discretion not to reserve jurisdiction to modify an award of spousal support that is to continue for a significant period of time. *Dyer v. Dyer* (Jan. 22, 1992), Clark App. No. 2801;*Canales v. Canales* (Mar. 17, 1989), Greene App. No. 88CA52. "Although the determination is a fact-sensitive one, we have held that a trial court abused its discretion in failing to retain jurisdiction over a spousal support award of as little as three years, finding that an award of such a duration was 'long enough to justify reservation of jurisdiction' because there was a substantial likelihood that the economic conditions of the parties would change. '*** Ohio courts generally agree that a trial court abuses its discretion in failing to reserve jurisdiction when imposing an indefinite award of spousal support.'" (Internal citations omitted.) *Seitz v. Seitz*, Champaign App. No. 2010 CA 9, 2011-Ohio-1826, ¶15. Because the trial court awarded spousal support for an indefinite period of time, the limitation on its retention of jurisdiction would be an abuse of discretion.

**{¶ 21}** We will remand this matter for the trial court to clarify its judgment as to the retention of jurisdiction over both the duration and amount of spousal support.

**{¶ 22}** Seventh, Mr. Hercutt objects to the trial court's handling of a $3,901 withdrawal that Mrs. Hercutt took from their Fireman's Fund shortly before the complaint for divorce was filed. According to Mrs. Hercutt, the Fireman's Fund held monies contributed when the couple's home burned in February 2007 and "people made donations for us to rebuild our house and furnish it because we were grossly underinsured." Mrs. Hercutt admitted at the hearing that she withdrew $3,901 from the Fireman's Fund around the time that the complaint for divorce was filed; she did not state how she spent the funds. The trial court did not order Mrs. Hercutt to repay all or part of these funds in its final judgment.

**{¶ 23}** Testimony was offered at the hearing about several financial transactions that were not fully explained. In addition to Mrs. Hercutt's withdrawal from the Fireman's Fund, she testified that Mr. Hercutt had withdrawn a smaller amount of money from their Fifth Third account. She also stated that he had taken over $24,000 in additional advances on their home equity line, and she had received none of this money. This testimony was bolstered, at least in part, by the testimony of McKinley Polston, who stated that in December 2008, Mr. Hercutt presented him with a $20,293.18 cashier's check drawn on a Fifth Third account, which was made out to Terry Hercutt but "endorsed over" to Polston. In exchange for the check, Polston gave Mr. Hercutt $20,293.18 in cash. Polston claimed not to know the reason for this transaction. Mr. Hercutt claimed that most of the money advanced to him on the home equity line "went back to her" and paid bills, but the parties

offered conflicting testimony on this point. Mrs. Hercutt also admitted to using some funds from the equity line to pay debts. All of the documentation presented to the court related to transactions that occurred prior to the filing of the complaint.

{¶ 24} The trial court ordered that the balance on the home equity line ($87,898.19) be treated as marital debt; it ordered each party to pay one-half of the debt, or that the entire amount be paid from the sale of the marital home. The trial court did not specifically address the money taken from the Fireman's Fund or from the other Fifth Third account, but these amounts were insignificant when compared with the disputed amount on the home equity line. Moreover, the transactions in question occurred during the marriage, and the parties did not expressly allege or establish the type of "financial misconduct" that would be required to support a distributive award or a greater award of marital property. See R.C. 3105.171(E)(4). We cannot conclude that the trial court's handling of the marital debts was inequitable or that the court abused its discretion.

{¶ 25} Mr. Hercutt's assignments of error are overruled in part and sustained in part. The matter will be remanded for the trial court to enter orders retaining jurisdiction to modify spousal support and dividing and distributing the parties' interests in the 1969 Ford truck and the Yamaha motorcycle, consistent with this Opinion. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

David M. McNamee
Terry L. Hercutt

Hon. Denise L. Cross