[Cite as *Walters v. Walters*, 2013-Ohio-625.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

LORETTA S. WALTERS                 :

    Plaintiff-Appellant             :         C.A. CASE NO.     25011

v.                                     :         T.C. NO.     08DR103

RONNIE LEE WALTERS             :         (Civil appeal from Common
                                             Pleas Court, Domestic Relations)

    Defendant-Appellee           :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    22nd    day of     February     , 2013.

. . . . . . . . . .

RAMONA EVANS DANIELS, Atty. Reg. No. 0069850, 260 Northland Blvd., Suite 226, Springdale, Ohio 45246
        Attorney for Plaintiff-Appellant

DAVID E. ERNST, Atty. Reg. No. 0029675, 11 S. Broadway, Suite 200, Lebanon, Ohio 45036
        Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** This matter is before the Court on the Notice of Appeal of Loretta

Walters,

filed January 30, 2012.  Loretta appeals from the January 10, 2012 Final Judgment and Decree of Divorce, which terminated her marriage to Ronnie Walters.

{¶ 2}    Loretta filed her Complaint for Divorce on February 4, 2008.  On December 15, 2008, counsel for Loretta filed a Motion for Competency Evaluation, which provides that she "suffers from mental and emotional problems which bear on the issues of this case, and Plaintiff may be unable to assist in her case."  The court granted the motion and ordered Loretta to "undergo a competency evaluation at her cost."  On January 7, 2009, counsel for Loretta filed a motion to withdraw as counsel of record, and the court granted the motion.

{¶ 3}    On March 23, 2009, Loretta filed a pro se motion for continuance that provides in part as follows:

> Per 2 Doctors statements, Undo Stress because my Attorney; John Paul Rion; Refused to file contempt of Court on Defendant for being 8 months behind on Court Orders Bills + not paying me + then Withdrawing from my case; because I requested an Ambulance while at his office + Kevin called the Police Instead, so John Paul filed to find me incompetent to cover his firm. * * *

{¶ 4}    We note that on March 29, 2010, Attorney David McNamee entered an appearance as counsel of record for Loretta and requested and received a continuance.  The final hearing was held on November 4 and 10, 2010, and Attorney John Meeling appeared on behalf of Loretta.  The trial court requested written closing arguments, and Lorretta's was filed on December 1, 2010, and Ronnie's was filed on December 3, 2010.  We note that Loretta attached, to her written closing argument, correspondence addressed to the court,

dated November 29, 2010, from "Mark Reynolds MD Psychiatrist." The letter is on "South Community Behavioral Healthcare" letterhead, and it states that Reynolds has provided treatment for Loretta for many years, and that she "has consistently reported suicidal intent contingent on the loss of her home." The correspondence further provides, "I am writing in the hope, whatever other outcome may occur with the finalization of Ms. Walter's divorce, that her home be maintained." The court issued a Decision on the contested issues on September 29, 2011, and it ordered counsel for Loretta to prepare the final decree. Both parties refused to sign the final decree.

{¶ 5} In the final decree, the court noted as follows:

On July 22, 2011, the parties and their respective counsel engaged in a conference with the Court in an attempt to resolve all issues in this matter. At that conference, the parties stipulated to the following: 1.) the date that the parties were married, separated (February 26, 2007), and to the fact that they are incompatible; 2.) to the fact that there are no minor children and that Wife is not currently pregnant; and 3.) to that (sic), because the parties could not reach agreement on the issues of a.) real estate, b.) vehicles and tools, c.) household goods and furnishings, d.) debt allocation, e.) financial accounts, f.) or spousal support, that the Court would have to determine how to divide and/or address those issues.

{¶ 6} The court noted that Ronnie receives income of $29,520.00, while Loretta receives income of approximately $7,956.00, and the court ordered Ronnie to pay spousal support in the amount of $750.00 per month plus a two percent processing fee. The court

ordered that the spousal support "shall terminate upon Husband's death, Wife's death, or Wife's remarriage, and is subject to review upon Wife's cohabitation with an unrelated person who contributes to her income." The court further ordered Ronnie to pay a spousal support arrearage in the amount of $50.00 per month until satisfied.

{¶ 7} Regarding the parties' marital residence, the court found as follows:

* * * The marital residence is located at 7 Catherine Court, Germantown, Ohio 45327. Within fourteen (14) days of the filing of the Final Judgment and Decree of Divorce, the parties shall agree upon a realtor to list the house for sale. If the parties fail to agree on a realtor they shall contact:

Real Estate Solutions, 32 S. Plum Street, Germantown, Ohio 45327 and list the home for sale. If Real Estate Solutions suggests some minor repair work in order to receive the best possible price, said work shall be completed and whichever party pays for the same shall be reimbursed fully before a division of the equity.

Once Real Estate Solutions determines a fair price to list said home, and before it is listed, Wife shall have the option of buying Husband out of said real estate, of if Husband determines he would like to retain the real estate, he shall buy Wife out of said home. If both parties decide they want to keep the residence, it shall be listed and sold at an arm's length transaction for the best obtainable price. If the home is sold, the proceeds shall be used to: 1.) Pay the mortgage remaining on said home, 2.) Pay the realty fees and

closing costs 3.) Reimburse each party for any and all repairs completed on said home to "ready" it for sale (including the cost of removing clutter from the home and cleaning it up), and 4.) Any remaining proceeds shall be equally divided between the parties.

During the pendency of the sale, Wife shall have exclusive occupancy of the marital residence and shall be responsible for all expenses associated therewith, including but not limited to, the mortgage payments, including insurance and taxes, and her other monthly living expenses including DP&L, Vectren, water and sewer, trash, telephone and cable, etc.

Each party shall follow any substantial advice, recommendations, and/or instructions/suggestions given by the realtor to further the sale of the home. No reasonable offer from a bonafide purchaser shall be rejected by the parties. Because Wife resides in the home, Wife shall make every reasonable accommodation to make sure the home is clean, free of clutter, and available for showing once it is listed for sale.

**{¶ 8}** The court further ordered that the parties' "camp lot" in Camden, Ohio, be appraised and sold, unless one party desires to "buy out" the other party. Regarding their vehicles, the court determined that Loretta "shall be the sole owner of the 1995 Ford Explorer, 1991 Sunbird, and the 1997 GMC van," and that Ronnie "shall be the sole owner of the 2008 Toyota Prius and the 1988 Ford Ranger," as well as the pontoon boat and "Car Hauler/Trailer." The court ordered Ronnie to sell the parties' motor home, unless Ronnie chose to retain it, in which case the court ordered Ronnie to have it appraised and pay

Loretta one half of the value of the motor home. The court ordered Loretta to list the Harley Davidson motorcycle for sale, unless Ronnie chose to retain it, in which case the court ordered Ronnie to have it appraised and pay half of the value to Lorretta "or offset the value of the marital home if Wife is able to buy said marital home from Husband."

{¶ 9} The court awarded Ronnie all of the tools "located in the shed and garage which are located on the marital property." The court also ordered the parties "to equally divide any and all Camping Equipment," as well as family photographs. The court ordered the parties to equally divide any items that were the property of the parties' deceased son. The court ordered each party to retain the personal effects and items of household goods and furnishings in each party's possession. The court specifically ordered that Loretta is entitled to items that she received as gifts, including "1.) her wooden 8-track tape player; 2.) red cookbook full of family recipes, 3.) a metal church bank that Wife's father made for her when she was 5 years of age, and 4.) a single chair that is part of a patio set that was gifted to her by Husband." The court concluded that Loretta "shall be entitled, free and clear of any right, title and interest, [to] any and all household goods not specifically awarded to Husband."

{¶ 10} The record reflects that Ronnie receives an annuity of $1,000.00 a month from the parties' insurance company, as the result of injuries he sustained in an accident on his motorcycle, and the court ordered that he "shall continue to receive the proceeds from his annuity, with the understanding that it will be considered as income to him for all purposes." The court noted that Ronnie has a Fidelity account in his name only in an amount of approximately $20,930.00, and it ordered that the account be divided and that Loretta

receive half thereof. The court determined that Loretta's inheritance is her separate property. The court ordered that the parties retain any funds held in any checking or savings accounts in their individual names.

{¶ 11} The court noted that Ronnie, in addition to the annuity mentioned above, receives Social Security benefits in the approximate amount of $1,460.00 per month, and that Loretta receives Social Security benefits in the approximate amount of $7,956.00 per year, as well as food stamps in the approximate amount of $2,400.00 per year. The court determined that Loretta "shall retain her Supplemetnal Security Income ('SSI'), free from any claim of Husband."

{¶ 12} Regarding the division of marital debt, the court determined that the parties each shall be solely responsible for payment of any liabilities currently held in their names and any liabilities incurred solely by them subsequent to their separation. The court noted that the parties had joint debt totaling approximately $17,000.00 from four closed accounts, and the court ordered that "joint marital debt shall be payable 50% by Husband and 50% by Wife." Finally, the court ordered that each party is responsible for their own attorney fees.

{¶ 13} Loretta asserts three assignments of error herein. Her first assignment of error is as follows:

{¶ 14} "THE TRIAL COURT ERRED IN DETERMINING THE CAPACITY AND COMPETENCE OF APPELLANT TO ENTER INTO STIPULATIONS."

{¶ 15} Lorretta asserts that "Ohio Rule of Civil Procedure 35 establishes the parameters by which a person may be subjected to a court-ordered mental evaluation. The mandatory provisions were not followed and such a failure renders the marital property

division invalid." Loretta further asserts that the "trial court record even includes a statement from a mental health professional weighing in on Appellant's fragile mental state." According to Loretta, a "significant breakdown in communication * * * resulted in a detrimental and inequitable division of property," and her "lack of agreement can also be extrapolated from her refusal to sign the decree."

{¶ 16} We initially note, Loretta's reliance upon Mark Reynolds' correspondence to establish her "fragile mental state" is misplaced; the opinion of Mark Reynolds was not admitted into evidence but was rather attached to Loretta's written closing argument, which was captioned "Memorandum to the Court regarding the Final Division of Marital Property." We further note that pursuant to Evid.R. 601(A), an adult witness is presumed competent to testify.

{¶ 17} Civ.R. 35 provides as follows:

When the mental or physical condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit himself to a physical or mental examination * * * The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner conditions, and scope of the examination and the person or persons by whom it is to be made.

{¶ 18} While we agree with Loretta's assertion that the court's order for a competency evaluation fails to set forth the "time, place, manner, conditions, and scope of the examination," as Civ.R. 35 requires, as Ronnie asserts, subsequent counsel for Loretta

failed to preserve the issue of Loretta's competency and the lack of an evaluation for appellate review. "Failure to timely object waives the opportunity for appellate review of any issue not preserved and, accordingly, such issue need not be considered for the first time on appeal. *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446, *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277." *Huffman v. Forsythe*, 2d Dist. Darke No. 1675, 2006-Ohio-5311, ¶ 35. There being no merit to Loretta's first assigned error, it is overruled.

{¶ 19} Loretta's second assigned error is as follows:

"THE TRIAL COURT ERRED IN FAILING TO DETERMINE THE VALUE OF ALL MARITAL PROPERTY."

{¶ 20} According to Loretta, because "the trial court failed to place a value on multiple property items, including the marital residence, such omission impacted the entire division of property." Loretta again asserts that she "was not clearly competent to enter into any stipulations or participate at the trial level. The objective document from the mental health professional should have been a strong consideration in favor of an award to Appellant of the marital home * * *."

{¶ 21} Pursuant to R.C. 3105.171(C), "the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(F) sets forth the factors a court shall consider in dividing marital property.

{¶ 22} "A reviewing court is limited to determining whether a trial court abused its discretion in making a property division. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128,

131, 541 N.E.2d 597." *Harshbarger v. Harshbarger*, 158 Ohio App.3d 121, 2004-Ohio-3919, 814 N.E.2d 105, ¶ 14 (2d Dist.).

**{¶ 23}** As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 24}** As reflected in the final decree, the property subject to division included real estate, vehicles, tools, household goods and furnishings, and financial accounts. Regarding the marital residence, the camp lot, the motor home, and the Harley Davidson motorcycle, although the values thereof were not identified, the court insured an equitable division between the parties by ordering that each item be sold, after an appropriate value is determined, with each party to receive half of the proceeds, or that one party "buy out" the other party's one half interest. In other words, those items were divided equally. As the trial court noted in its September 29, 2011 Decision, the record reflects that Loretta "agrees

that Ronnie may keep the pontoon boat, 1988 Ford Ranger and the car hauler as long as she can keep the 1995 Ford Explorer, 1991 Sunbird and the 1997 GMC van," and the court divided that property accordingly. The record further reflects that Ronnie indicated at the final hearing that "[t]here's nothing furniture-wise I want." We note that the 2008 Toyota Prius awarded to Ronnie was purchased by him after the parties separated.

{¶ 25} Regarding the tools and household goods and furnishings, we note that the trial court, in its September 29, 2011 Decision, consistent with the testimony in the record, indicated that Ronnie wanted all of the tools located in the shed and garage located on the marital property, which the court awarded to him. Loretta did not specifically request any tools. The court then determined, based upon the testimony presented, as follows:

The marital residence has many years of items stored both inside and outside. Loretta stated she has had a number of items stolen from her since Ronnie moved out, however, this court finds that the description she gives of the home would make it difficult for anyone to tell if anything is missing. Ronnie stated there was so much inside the home he gave up sleeping in the bedroom and slept in a chair for approximately 3 years. Their daughters are unable to navigate through the home. Loretta stated that she is a compulsive shopper and in the past 2 ½ years she accumulated $15,000 worth of size 6 clothes, $4,000 worth of QVC jewelry, $6,000 worth of costume jewelry, and various other boxes of items.

Loretta testified that the majority, if not all, of the items listed in the foregoing paragraph were stolen by Ronnie. She further testified she did not

see Ronnie take any of the items nor has she seen any of them in his possession. The Court does NOT find that Ronnie took any of the missing items, if in fact any are missing. Once Loretta begins to clean, or the parties hire someone to clean, this home to ready it for sale many items may be located inside this home.

* * *

The Court finds it equitable to award Loretta, free and clear of any right, title and interest, any and all household goods not specifically awarded to Ronnie. These items shall be Loretta's wherever they are found. She is entitled to any and all items that were gifted to her, wherever they are found.

{¶ 26} The court specifically awarded Loretta her tape player, cookbook, bank and chair that is part of the patio set. Finally, the court ordered that the parties' family photographs, camping equipment, Ronnie's Fidelity account and any property belonging to their deceased son be equally divided.

{¶ 27} Having thoroughly reviewed the record before us, we cannot determine that the trial court's failure to value the parties' property resulted in an abuse of discretion in the division thereof, since the marital residence, camp lot, motor home, Fidelity account and motorcycle were divided equally, Loretta agreed to the division of the pontoon boat, 1988 Ford Ranger, 1995 Ford Explorer, 1991 Sunbird and 1997 GMC van, the Prius was purchased by Ronnie after the parties separated, and Loretta received all of the parties' extensive household goods with the exception of the tools located in the garage and shed. We note the trial court's determination that Loretta's testimony was not credible regarding

Ronnie's alleged theft of items from the marital residence, and we defer to the trial court's assessment of credibility. *Hercutt v. Hercutt*, 2d Dist. Montgomery No. 24778, 2012-Ohio-206, ¶10. We further note that Defendant's Exhibit E, a "Listing of Assets" at the marital residence, prepared by Ronnie, is extensive and includes many antiques and other indoor and outdoor furniture, jewelry, artwork, electronics and appliances, as well as unknown items in multiple boxes, all of which were awarded to Loretta. Finally, as noted in the first assignment of error, Loretta's argument regarding her alleged incompetence again fails as it was not properly preserved for appeal. Accordingly, Loretta's second assigned error is overruled.

{¶ 28} Loretta's third assigned error is as follows:

"THE TRIAL COURT ERRED IN CONSIDERING SPOUSAL SUPPORT IN CONJUNCTION WITH THE PROPERTY DIVISION."

{¶ 29} According to Loretta, the "trial court abused its discretion in dividing the marital property by considering spousal support issues contemporaneously with the Husband-Appellee's annuity." Loretta directs our attention to *Quigley v. Quigley*, 6th Dist. Lucas No. L-03-1115, 2004-Ohio-2464, and she asserts that the 6th District "reversed the trial court's property division, because the trial court did not first divide the parties' marital assets without regard to an award of spousal support."

{¶ 30} As this Court has previously noted, the "factors that the court must consider in determining whether to award spousal support, and, if it does, the nature, amount, terms of payment, and duration of support ordered are set out in R.C. 3105.18(C)(1)(a) through (m)." *Hittle v. Hittle*, 181 Ohio App.3d 703, 2009-Ohio-1286, 910 N.E.2d. 1042, ¶ 8 (2d

Dist.).   Pursuant to R.C. 3105.171(C)(3), "[t]he court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded."   R.C. 3105.18(C)(1)(a) provides that in determining spousal support, the court shall consider in part the "income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code." R.C. 3105.171(A)(6)(a)(vi) defines separate property in part as "[c]ompensation to a spouse for the spouse's personal injury."

**{¶ 31}**   "'The trial court enjoys wide latitude in awarding spousal support and its decisions are reversible only for an abuse of discretion."   *Hittle*, ¶ 8.

**{¶ 32}**   The trial court's September 29, 2011 Decision addressed Ronnie's annuity as follows:

Ronnie testified that he was in a motorcycle accident in 1993 and as a result he receives a tax free annuity of $1,000 per month for life or 20 years "certain."   He believes he has approximately 9 years left to receive said annuity.   He further states that said payment is his alone. * * *

Loretta states she is entitled to ½ of said annuity payment because it is the result of a family insurance policy paid for during the marriage.   She believes that Ronnie was already paid for "pain and suffering" which would be his award alone and that now the payment is marital.   Additionally, Loretta presented a note, presumably signed by Ronnie which stated he would give her $500 a month of said annuity. * * * Ronnie stated he never reached

such an agreement and that his signature does not appear on said note.

The Court finds this annuity issue is moot because due to the long term of this marriage any and all income from whatever source will be considered when determining a Spousal Support award. This Court will award the annuity to Ronnie, with the understanding that it will be considered as income to him for all purposes.

**{¶ 33}** We initially note that Loretta's reliance upon *Quigley* is misplaced. Therein, the trial court determined that the husband's "criminal actions and subsequent loss of employment made a spousal support award 'impracticable,'" and it instead ordered a disproportionate division of marital property, but the court "did not first divide the parties' marital assets without regard to an award of spousal support, as required by R.C. 3105.171(C)(3)." *Id*., ¶ 103. The Sixth District determined that the "trial court abused its discretion by not providing for the equitable division of marital property before considering an award in lieu of spousal support." *Id*., ¶ 104.

**{¶ 34}** Here, an abuse of discretion is not demonstrated, since the trial court did not order a disproportionate division of marital property in lieu of spousal support, but rather equally divided the parties' marital property, awarded the annuity to Ronnie as separate property, and then considered the annuity as income for purposes of determining Loretta's spousal support. There being no merit to Loretta's third assigned error, it is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Ramona Evans Daniels
David E. Ernst
Hon. Denise L. Cross